SAMUEL C. SHEPPARD and MARTHA A. MONT-GOMERY, Appellants, v. JOSEPH WAGNER et al.

Division One, February 29, 1912.

1. BILL OF EXCEPTIONS: Record Showing of Filing. Where it appears from the record proper that the bill of exceptions was filed in open court, and by the court made a part of the record in the cause, there is a sufficient showing of the filing of the bill.

2. CONVEYANCE: Mortgage or Deed. If a deed on its face a conveyance in fee simple was once a mortgage, it continues to

be a mortgage; and being a mortgage, it remains a mortgage until foreclosed in court, or otherwise adjusted by an agreement of the parties. The maxim, "Once a mortgage, always a mortgage," remains with its pristine vigor in full force in this State.

3. ———: ———: **Existing Debt.** A contemporaneous contract, if executed to secure an existing debt, or a debt created at the time, or a debt to be created in the future but agreed upon and understood at the time, has the effect of turning a deed absolute on its face into a mortgage.

4. ———: ———: **Matters Which Cannot be Recited in Deed.** A "whereas" in the contemporaneous contract referring to the deed that "there are certain terms and conditions agreed to between the parties regarding this conveyance which are not and cannot be expressed in said deed," shows that the deed was not in fact what it appeared on its face to be; and while it will not of itself authorize a holding that the deed was a mortgage rather than a conditional sale, it is a strong circumstance that must be taken into consideration in connection with other recitals in the contract.

5. ———: ———: **Existing Debt: Rents and Repairs: Landlord and Tenant: Redemption.** The land was incumbered with a mortgage for $2600, and taxes unpaid, and $182 in interest was due, and the owner conveyed it by a deed absolute on its face, and he and the grantees entered into a contemporaneous written contract, by which they were to pay the interest and taxes and to be repaid by the use of the property and the rents, and he was to have the privilege of selling the property at any time within three years for the amount of the incumbrance and the costs of any repairs or special taxes paid by the grantees, who were to be reimbursed for any such costs, and to have a lien on the property therefor, its last clause providing for a "redemption" of the property by the grantor within three years. *Held*, first, that, tested by the prime test (the existence or creation of a debt) the contract not only creates a debt, namely, the amount of the annual taxes and interest, but provides the means and method of paying that debt, namely, by the use of the premises and rents, and the deed is a mortgage; and, *second*, the provision for a "lien" on the premises in favor of the grantees for the costs of repairs and public improvements paid by them, and for "redemption" by the grantor, which words of themselves bespeak a mortgage, enforce the idea that the deed was understood and intended to be a mortgage.

6. ———: ———: **Right to Redeem Limited in Time: Conditional Sale.** The primary purpose of the contract being to secure the grantees in the absolute deed for their outlay, and to preserve to the grantor the right to redeem the property or to

sell it at a price above the incumbrances, the excess to be his, a provision in the contract that, if it should not be sold or re- deemed within three years and he should die within that time, all his interests in the property should vest absolutely in the grantees, is not sufficient to change the deed from an equitable mortgage to a conditional sale. The deed being in fact a mort- gage, this limitation of a right to redeem to three years was a nullity. If a deed is in fact a mortgage, the law preserves the right to redeem though the contract may undertake to cut off that right.

7. ———: ———: Other Matters Pleaded as Consideration for Deed: Motion for Judgment on the Pleadings. But though the contemporaneous contract, when considered alone, shows the deed to be a mortgage, yet if other facts are pleaded which, if true, show a good consideration for the deed, and thereby a question of fact is pleaded—an independent agreement to con- vey for services, fully performed—the court should not sustain defendant's motion for judgment on the pleadings; but having done so, and the independent agreement and consideration being only vaguely pleaded, the appellate court will consider only the plea on which defendant seemed to rely, namely, that she had title through her contemporaneous contract, and that being held invalid, the cause will be remanded that she may, if she wishes, show her right to the property through another valid agreement and transaction.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune,* Judge.

REVERSED AND REMANDED (*with directions*).

*Botsford, Deatherage & Creason* for appellants.

(1) The deed and contract of even date created the relation of mortgagor and mortgagee between Sheppard and the respondents. 11 Am. & Eng. Ency. Law (2 Ed.), p. 243; Brent v. Robertson, 16 Mo. 129; Wilson v. Drumrite, 21 Mo. 325; Peugh v. Davis, 96 U. S. 337; Villa v. Rodrigues, 12 Wall. 339; Chance v. Jennings, 159 Mo. 554; Reiley v. Cullen, 159 Mo. 322; Robb v. Wolf, 148 Mo. 334; Book v. Beasley, 138 Mo. 460; O'Neill v. Cappelle, 62 Mo. 205; Cobb v. Day, 106 Mo. 278. (2) The relation of mortgagor and mort- gagee having been established by the deed and con-

tract bearing date of August 31, 1904, the equitable maxim of "once a mortgage always a mortgage" obtains, and the appellants as heirs of Sheppard have the right to redeem the same and have a deed back from the respondents. Reiley v. Cullen, 159 Mo. 322; Chance v. Jennings, 159 Mo. 554. (3) The deed and contract of August 31, 1904, cannot operate as a gift *inter vivos*, because to operate as a gift *inter vivos* Mr. Sheppard must have relinquished all personal dominion over the property, with relation to the time of the execution of these instruments. McCord's Adm. v. McCord, 77 Mo. 166; Breber's Adm. v. Boeckmann, 70 Mo. App. 503; Walter v. Ford, 74 Mo. 195; In re Soulard, 141 Mo. 657; Dunn v. Bank, 109 Mo. 90; Jones v. Falls, 101 Mo. App. 548; Harris Bank v. Miller, 190 Mo. 640; Godard v. Conrad, 125 Mo. App. 165; Tygard v. McComb, 54 Mo. App. 85; Vogel v. Gatz, 20 Mo. App. 104.

*Theoph. L. Carns* and *Joseph S. Rust* for respondents.

(1) There is no bill of exceptions in this case because the abstract of the record proper does not show that the so-called bill of exceptions was signed by the trial judge. Keaton v. Weber, 233 Mo. 691; Harding v. Bedoll, 202 Mo. 634; Pennowfsky v. Coerver, 205 Mo. 136; Everett v. Butler, 196 Mo. 566; Noble v. Brinson, 231 Mo. 640; Webster v. Berry, 140 Mo. App. 387; Wallace v. Libby, 231 Mo. 341; Hutton v. Clark, 145 Mo. App. 188. (2) Since the appellants simply claim to have moved for an interlocutory judgment and there is no bill of exceptions in the case, this court will only consider the record proper. The alleged motion for interlocutory judgment is not before the court, not being a part of the record proper. City of Tarkio v. Clark, 186 Mo. 285; State v. Price, 186 Mo. 140; Sternberg v. Levy, 159 Mo. 629; Nickerson v. Peery,

163 Mo. 77.   (3)  The abstract of the record proper
does not contain the alleged motion for "interlocutory
judgment and accounting" or any other motion.  Such
motions do not belong to the record proper and appel-
lants so recognized and did not put them there.  There-
fore if there is no bill of exceptions, there is nothing
before the court except the petition, answer, reply and
judgment.   City of Tarkio v. Clark, 186 Mo. 293; Ash-
ton v. Penfield, 233 Mo. 391.   (4)  Since the petition
does not state facts which show an enforcible indebt-
edness from Sheppard to the respondents at the time
of the deed and first contract, and fails to state that
the deed and first contract were given to secure the
payment of such indebtedness, it follows that the peti-
tion fails to state a cause of action in equity.   The
naked averment that the deed and contract constitute
a mortgage is not sufficient.   Hubbard v. Jones, 193
Mo. 147; Donovan v. Boeck, 217 Mo. 70.   (5)  Since
the petition does not state that the property involved
exceeded in value the incumbrance and other charges
which the pleadings admit were against it, the peti-
tion fails to state a cause of action in equity.   If there
was then no equity in the property, there is now no
equity in the bill.   Sternberg v. Levy, 159 Mo. 630.   (6)
Respondents state in their answer that Sheppard, for
a valuable consideration and services rendered him by
respondent, Ella A. Wagner, had agreed, prior to the
transaction at bar, that she should have all his prop-
erty at his death.   That, if true, is a good defense to
this action, and therefore appellants were not entitled
to judgment on the pleadings.   That such an agreement
is valid, see: Hall v. Harris, 145 Mo. 614; Green v.
Ditsch, 143 Mo. 1; Swan v. Stevens, 143 Mo. 385.   (7)
The deed and contract between Sheppard and the re-
spondents constitute a conditional sale, and not a mort-
gage.   Bobb v. Wolff, 148 Mo. 335; Hubbard v. Jones,
193 Mo. 147; Bailey v. Trust Co., 188 Mo. 483; Powell
v. Crow, 204 Mo. 481; Duell v. Leslie, 207 Mo. 658;

Donovan v. Boeck, 217 Mo. 70; Jones v. Rush, 156 Mo. 364.

GRAVES, P. J.—Samuel C. Sheppard and Martha A. Montgomery were the surviving brother and sister and sole heirs at law of one William L. Sheppard, deceased.

In 1906, about one year after the death of William L. Sheppard, the said Samuel C. Sheppard and Martha A. Montgomery brought a suit in equity in the circuit court of Jackson county to have a certain deed conveying property in Kansas City, Missouri, made by William L. Sheppard to Joseph L. Wagner and Ella A. Wagner declared to be a mortgage, and for an accounting between the parties. The petition avers that the deed, although absolute upon its face, was, by reason of a contemporaneous contract entered into by and between the parties, in law and in fact a mortgage. Both instruments are set out in the petition, but we may well omit the deed from this statement. The contract reads:

"This contract made and entered into this 31st day of August, 1904, by and between Joseph C. Wagner and Ella A. Wagner, husband and wife, of the first part, and William L. Sheppard of the second part, all of Kansas City, Jackson county, Missouri,

"Bears witness: That whereas the said second party has this day made, executed and delivered to first parties a warranty deed conveying to them the following described real estate in Kansas City, Jackson county, Missouri: All of the west fifty feet of lots numbered one and two in block one in J. H. McGee's addition to the City of Kansas, now Kansas City. Also a strip of ground immediately east of and adjoining the above described property four feet wide and ninety-six feet long;

"And whereas, there are certain terms and conditions agreed to between the parties regarding this

conveyance which are not and cannot be expressed in said deed; and whereas said property is encumbered by a deed of trust to secure a loan of $2600 given to one P. H. Madden, trustee for Charles N. Brooks, and recorded in the office of the recorder of deeds in Kansas City, Missouri, at page 561 in Book B-570; and whereas there is interest due and unpaid on said loan of $182, also taxes amounting to about fifty-two dollars; and whereas second party is unable to pay said interest and taxes; It is therefore agreed as follows: That in consideration of the conveyance aforesaid, first party agrees to pay said interest and taxes, and for so doing, they shall have the use of said property and the rent coming from any part thereof.

"It is further agreed that said second party shall have the right to contract for the sale of said property at any time within three years from this date, and that if he should secure a purchaser for same within said time, first parties will convey same to said purchaser, but that second parties shall not contract for a sale of said property for less than sufficient to pay the deed of trust aforesaid and all incumbrances against said property and to reimburse said first parties for any and all amounts they may have paid on said property or in connection therewith by way of repairs or for any other purpose except the interest and taxes aforesaid; and regarding the interest and taxes aforesaid it is agreed that first parties shall have the use, rents and income of said property for one year for each and every time they shall pay said interest and taxes, and if said property should be sold during the year for which first parties have a right to occupy same and collect rents as aforesaid, first parties shall be reimbursed out of the proceeds of the sale of the same pro rata; in other words first parties shall be reimbursed for whatever portion of said year remains unexpired at time of sale figuring on a basis of $234 per year,

or whatever amount said interest, state and county and city taxes may amount to.

"It is further agreed that if said parties shall expend any sum for repairs on said property or for any other purpose in connection therewith, than the taxes and interest aforesaid, the same shall be repaid to them out of the proceeds of the sale of said property as aforesaid, and that any amount so paid shall be a charge and lien against said property in favor of first parties.

"It is agreed that the taxes hereinbefore referred to does not include any special taxes that now are or may be assessed against said property; and if said property is not sold within three years aforesaid, second party's right and authority to sell same shall then cease and he shall have no further interest in the same, but that the title shall be absolute in first parties and discharged of any and all claim of second party.

"It is further agreed that if second party should die during the three years aforesaid and before said property shall be sold in accordance with this contract, all his rights and interest in and to said property and under this contract shall cease at his death and absolutely vest in first parties.

"It is agreed and understood that the deed of conveyance aforesaid is made and delivered to first parties for the purpose of vesting title in fee simple in first parties with a right of redemption in second party in the manner herein provided within the three years aforesaid.

"In witness whereof said parties have hereunto set their hands to duplicate copies hereof."

The petition then further avers (1) that the deed and contract were a part and parcel of one transaction and therefore constituted a mortgage and still constitute a mortgage, (2) that defendants have been and now are in the possession of the premises claiming to be the owners thereof and denying the right of re-

demption in plaintiffs, (3) that plaintiffs are not advised as to what sums the Wagners have paid out under the contract aforesaid, but pray that an accounting be had thereof, and that they be permitted to redeem upon the payment of the amount found to be due the Wagners. The petition then further avers certain things should be taken into consideration in said accounting thus: (1) that certain improvements on the premises had been destroyed by fire and the Wagners received the insurance paid therefor, (2) that the Wagners removed certain fixed improvements from the premises of the value of $500 and asks that such sum be taken into consideration, and (3) rents upon such property. The prayer of the petition thus summarizes the plaintiffs claims:

"Wherefore, the premises considered, said plaintiffs pray that the court will decree upon the hearing of this cause that an accounting be taken of any and all sums to which said defendants, Joseph C. Wagner and Ella A. Wagner, may be entitled by virtue of the provisions of the deed and contract aforesaid, by virtue of any premiums which they may have paid on the aforesaid insurance and by virtue of any other grounds upon which they are entitled to credits, together with the amounts chargeable against said defendants, Joseph C. Wagner and Ella A. Wagner, on account of the rentals of said property; and that they be required to give an accounting for the value of the barns and rooms on the second floor thereof used for residence purposes; and that the court having taken an accounting as between plaintiffs and said defendants Joseph C. and Ella A. Wagner, will decree accordingly that plaintiffs have the right to redeem, by paying the amount so adjudged to said defendants Joseph C. and Ella A. Wagner, said property described in said deed and contract from the lien and incumbrance thereby created; and that the court decree that de-

fendants account and pay the plaintiffs herein for any and all sums which under the premises the court finds defendants are indebted to plaintiffs; and that plaintiffs may have such other and further relief in the premises as to the court may seem proper, together with a judgment for their costs in this behalf laid out and expended.''

The answer may be analyzed as follows: (a) A general denial, coupled with an admission that plaintiffs are the sole heirs and next of kin of William L. Sheppard. (b) Defendants admit the execution of the deed pleaded by plaintiffs, and admit the execution of the contract as set out hereinabove. The answer then proceeds:

''Answering further these defendants state that said William L. Sheppard executed and delivered said deed to these defendants for a good, valuable and adequate consideration, and thereby conveyed to them an absolute title to said property in fee simple, subject only to the condition set forth in said contract, to-wit: that said Sheppard might sell said property at any time within three years after said date, provided he should live that long, and provided further that he should find a purchaser at a sufficient price to enable him to comply with the other conditions of said contract. That said Sheppard died within three years after said date, and without having made a sale of said property. And that thereby said condition for the sale of said property became void, and that, accordingly, the title to said property remains absolute and unconditional in these defendants. And that there never was, at any time, any intention or purpose on the part of said Sheppard or of these defendants that said deed and contract should operate as a mortgage or security for any indebtedness.

''That at the time said deed and contract were. executed, there was a deed of trust against said property securing a note for the sum of $2600. And that

there was an installment of interest past due upon the same for the sum of $182 and other like installments of interest which would fall due within a short time thereafter, and that there were back taxes for about three years past due upon said property. That said Sheppard was unable to pay said interest or said taxes, and that he was in imminent danger of losing said property through foreclosure of said deed of trust or sale for said taxes. That said Sheppard made numerous efforts to procure another loan upon said property, in order to meet said obligations and save the same from such foreclosure or sale, but was unable to do so for the reason that said property was at that time of insufficient value to secure an indebtedness in a sufficient amount to cover all said incumbrances. That said Sheppard believed that said property would greatly increase in value within a few years after said date, and was very desirous that said increase should inure either to his benefit or to the benefit of these defendants. And, being unable to make any other arrangements that would save said property from sale or foreclosure, as aforesaid, he made said deed and entered into said contract with the intention that, if said property should increase in value in three years sufficiently to justify him in so doing, he would make such sale and thus realize said increase in value; but that, if he should fail to make such sale, or should die within said time, then said conveyance should remain absolute, and any such increase in value should inure to the benefit of these defendants.

"That these defendants are now owning and holding said property under and by virtue of said deed, and that neither of the plaintiffs herein nor the defendant Crohn has any right, title or interest therein.

"That said Sheppard was the stepfather of the defendant, Ella A. Wagner, he having married her mother in the early infancy of said Ella A. Wagner, and that he reared her and cared for her from her said

early infancy, and that she was kind and obedient to him and treated him as a dutiful daughter, and attended to the housework for his household, and aided him in his business, and lived with him until the time of his death, and cared for him in his declining years. And that he was greatly attached to her, and in consideration of her remaining with him and caring for him agreed and had intended, for many years before his death, to leave all of his property to her when he should die.

"Answering further, these defendants state that, on or about the 12th day of July, 1905, they entered into a contract with said William L. Sheppard, which is in words and figures as follows:

" 'This contract made and entered into this — day of ————, 1905, by and between William L. Sheppard of the first part and Joseph C. Wagner and Ella A. Wagner of the second part, all of Kansas City, Jackson county, Missouri, bears witness:

" 'That whereas heretofore the said William L. Sheppard conveyed to the second parties the following described real estate situated in Kansas City, Jackson county, Missouri, to-wit:

" 'All of the west fifty feet of lots Nos. 1 and 2 of block No. 1, in J. H. McGee's addition to the City of Kansas, now Kansas City, also a strip of ground immediately east of and adjoining the above described property, four feet wide and ninety-six feet long; and whereas at the time of making said conveyance by first party to second parties, the said parties entered into a contract which is hereto attached and marked Exhibit "A"; and whereas at the time of said conveyance there was a suit pending in the circuit court of Jackson county, Missouri, wherein said party was plaintiff and Kansas City, Missouri, was defendant, the purpose of said suit being to recover the damages caused by said city to said property on account of cutting Baltimore avenue through and past said property;

and whereas, since the making of said contract, first party has recovered a judgment against said city for $1500, said judgment being recorded in the judgment records of condemnation and grading of the circuit court of Jackson county, Missouri, in book two, page 54; and whereas it is desired by first party that second parties shall pay the expense of grading and other improvements necessary about said property resulting from cutting of Baltimore avenue through and past said property, and whereas first party recognizes the right of second parties to the proceeds of said judgments with which to pay for said special taxes or improvements.

" 'Now therefore it is agreed between the parties hereto as follows: First party hereby transfers and assigns to the second party all his right and interest in and to said judgment for $1500.

" 'Second it is agreed that, should first party sell said property in accordance with the terms of "Exhibit A" prior to the time when it shall become necessary for second party to pay or expend any money for special taxes or improvements as aforesaid, then said second parties shall pay, if said judgment has been collected by second parties, the proceeds realized from said judgment back to the first party, provided, however, first party, if he sells said property, shall sell it so that the purchaser shall pay said special taxes and improvements.

" 'It is further agreed that, if said property is not sold by the first party according to the terms of said "Exhibit A" then second parties shall use proceeds of said judgment to pay special taxes, grading and improvements on and about said property, provided it does not require the full amount of said judgment to so pay for said special taxes and improvements, then second party shall pay the difference between the amount so required and the amount realized from said judgment, to whoever said party shall direct.

" 'In witness whereof the said parties have hereunto set their hands to duplicate copies hereof this 12th day of July, 1905.'

"And that about the last mentioned date, said Sheppard duly assigned said fund to these defendants upon the record of said judgment.

"That, about the — day of ———, 1904, and before said deed and contract were executed, there was a proceeding pending in Division No. Five of this court, entitled, 'In the Matter of Grading Baltimore Avenue from Fourteenth to Sixteenth Streets, Kansas City, Missouri,' and numbered 19279. That said suit or proceedings was brought by said Kansas City with the intention of grading said Baltimore avenue between said points, and for the purpose of ascertaining the damages that would accrue to the owners of property abutting upon said Baltimore avenue between said points. That the property in controversy in this suit abuts upon said Baltimore avenue between said points and that said Sheppard some time before the execution of said deed and first contract, duly filed his claim in said proceedings for damages to accrue to said property by reason of said grading; and that, after the execution of said deed and said first contract, and before the execution of the last mentioned contract, a jury, duly impaneled in said proceedings, duly awarded to said Sheppard the sum of $1503.49 as his damages to accrue to said property as aforesaid. And that said proceedings and said award of damages are the same proceedings and award that are mentioned and referred to in the said contract of July 12, 1905. That said Sheppard had retained an attorney to represent him in said proceedings and that said Division Five of this court allowed said attorney seventy-five dollars as his fees in said proceedings and ordered the same paid out of said fund of $1503.94, and the same was paid accordingly, and that the remainder of said fund, to-wit, $1428.94, has never been paid to anybody.

That, after the award of said fund to said Sheppard, as aforesaid, said Kansas City filed its motion in said Division Five of this court, in which it recited that there were conflicting claims for said fund, and asked said court to make an order upon it to pay said fund to the clerk of this court; and said order was made accordingly, and that said fund of $1428.94 still remains in the hands of said clerk.

"That, after the death of said Sheppard, P. J. Hughes and C. A. Brockett Cement Co., and Halliwell Cement Co., and Deatherage Lumber Co., made application to the probate court of said Jackson county for the appointment of an administrator of the estate of said Sheppard, and represented therein that said estate was indebted to them, respectively, in various sums. And that, in obedience to said application and by reason thereof, said probate court appointed the defendant Crohn as such administrator, and that Crohn duly qualified himself as such administrator. And that said Crohn, as such administrator, and at the instance and request of said creditors, filed his claim or intervening petition in said Division Five of this court, in the aforesaid proceedings or suit, and charged therein that said deed and said contract of August 31st, 1904, constituted a mortgage, in all things the same as said charge is made by the plaintiffs herein in said amended petition, and asked said court to award said sum to him as such administrator in order that he might apply the same to the payment of said debts against the estate of said Sheppard. And that these defendants filed their claim in said Division Five of this court, in which they denied said charges in said intervening petition of said Crohn, and pleaded said deed and said two contracts with said Sheppard, and claimed said fund as their own by reason thereof, and asked the judgment of said court in accordance with their said claim. That the issues were thus made up between said Crohn and these defendants and were

duly tried in said Division Five of this court, about July, 1906, before the Honorable J. H. Slover, judge of said Division Five at that time. And that, after a thorough trial of said issues upon said pleadings and the evidence, and after mature consideration of the same by said court, and about December, 1906, said court duly rendered its judgment and decree therein in favor of these defendants, and duly adjudged and decreed that these defendants were entitled to said fund. That, in said finding and judgment, said court necessarily found that said deed and contract did not constitute a mortgage, as is claimed by the plaintiffs herein, but, on the contrary, that they constituted a conditional sale, and that, when the condition mentioned in the contract failed, the conveyance became absolute, and that these defendants hold the title in fee simple. That said judgment and decree of said Division Five of this court has never been appealed from or set aside or in any wise modified and these defendants herein plead the same as a final adjudication of the question as to whether or not said deed and contract so constitute a mortgage, and state that such judgment and decree is a final adjudication to the effect that said documents do not so constitute a mortgage, but have resulted in an absolute conveyance to these defendants, as aforesaid, and that the plaintiffs herein ought not to be permitted to proceed further with this suit.

"That, immediately after the rendition of said judgment and decree by said Division Five of this court, said P. J. Hughes, and C. A. Brockett Cement Co., and Halliwell Cement Co. and Deatherage Lumber Co. filed their individual claims or intervening petitions, respectively, in said division and in said proceedings, in which claims or intervening petitions they individually and respectively charged that said deed and contract constituted a mortgage as aforesaid, and that they individually and respectively are

creditors of said Sheppard, and asked a judgment and decree of said court awarding said fund to them in their individual capacity and respectively. That these defendants answered said claims or intervening petitions, denying as aforesaid that said deed and contract constitute a mortgage, and claiming all said fund as their absolute property, and asking judgment accordingly. That the issues as thus made up have not yet been decided, but still remain pending and for trial and disposition in this court. And that said Halliwell Cement Co. took a change of venue from said Division Five of this court.

"Answering further these defendants state that on the — day of ————, 1906, said Kansas City began a proceedings in this court entitled, 'In the Matter of Grading Fifteenth Street from Baltimore Avenue to Main street,' and numbered 27963, with the intention of grading said Fifteenth street between said points, and for the purpose of ascertaining and fixing the damages that would accrue to the owners of property abutting upon said Fifteenth street between said points. That the property in controversy in this suit abuts upon said Fifteenth street between said points, and that these defendants, about the — day of January, 1907, filed their claim in said proceedings, charging therein that said property would be damaged by said proposed grading, and asked damages accordingly. That afterwards a jury was duly impaneled in said proceedings; and, after a regular trial of the issues upon said claim, said jury duly rendered their verdict wherein they duly awarded to these defendants the sum of $500, for such damages, and that a judgment was duly rendered by this court, in Division No. Two thereof, in favor of these defendants for said sum, and that the same has not yet been paid to these defendants by said Kansas City. That, in the prosecution of said claim for damages, these defendants retained an attorney to represent them therein, and that

he charged them thirty-five dollars for his services in said behalf. Also that, in the prosecution of said claim for damages, these defendants were obliged to procure expert testimony, and to incur other expenses in the sum of twenty-five dollars.

"Answering further these defendants state that said Baltimore avenue has now been graded in all things as contemplated in said proceedings No. 19279, and that, about January, 1907, two certain taxbills were duly issued against said property, in payment for said grading in the aggregate sum of $882.93, by the proper authorities of said Kansas City and in accordance with the charter of said city. And that, according to law and according to said charter, said taxbills were a valid and subsisting lien against said property, and ten per cent interest would have been added to the same if they had not been paid on or before February 18, 1907; and, later, if said taxbills had not been paid, said property would have been sold for the satisfaction of the same. And that, in order to prevent the addition of said penalty and the sacrifice of said property by sale as aforesaid, these defendants were obliged to pay and did pay said taxbills in said sum of $882.93 on or about the said 18th day of February, 1907; that since the execution of said deed and first contract, these defendants have been obliged to pay, in order to save said property from the foreclosure of said mortgage, and have so paid interest upon said mortgage in the sum of $546, and that another installment of said interest in the sum of $182 will have to be paid on the 2nd day of November, 1907. That, before the execution of said deed and first contract, these defendants paid taxes upon said property, at the request of said Sheppard and to prevent the sale of said property therefor, in the sum of $63.69; and that since the execution of said deed and first contract, these defendants have paid taxes upon said property in the sum of $222.78. That, since the execution of

said deed and first contract, these defendants have paid for necessary repairs upon said property the sum of forty-nine dollars and sixty cents."

There then follows a long list of items which the parties defendant aver that they paid out for the said William L. Sheppard personally, but not with reference to the property here in dispute. The answer then thus concludes:

"Answering further these defendants state that a sewer has recently been completed along Baltimore avenue adjacent to said property; and that the curbing has recently been put in along the same; and that sidewalks will soon be put in along said street; and that said Kansas City is now proceeding with the paving of said avenue, and that taxbills will be issued against said property for the payment of said improvements, within a very short time; also that the said Kansas City is now engaged in grading Fifteenth street adjacent to said property, and that taxbills will soon be issued against said property for the payment of same. And also that the State and county taxes for the year 1907 will soon become due against said property. And that, unless said taxes and taxbills be paid as they accrue, said property will be sold for the same and thereby sacrificed.

"Answering further these defendants state that the barn, referred to in said amended petition, was old and in a dilapidated condition, and of very little value, and that the north wall thereof extended over the line of Fifteenth street so that said barn would have fallen into said street if it had not been torn down. Also, that, since said Baltimore avenue and Fifteenth street have been graded—the first on the west and the second on the north of said property—to the depth of about twenty-five feet, said property has become inaccessible, unless said property should be graded to the street grade, in which case said barn would necessarily have been torn down, or unless re-

taining walls should be built along both said streets, and steps built up to the property, which would cost about $3000. And that, under these circumstances, these defendants thought best to tear down said barn and use the materials elsewhere. And that these defendants tore down said barn and carried away said materials. But that said materials were old and decayed and of very little value, and hardly paid the expense of tearing down said barn.

"And having fully answered, these defendants ask for a decree of this court, quieting the title to said property in these defendants and awarding to these defendants said fund awarded to them in the proceedings for grading Fifteenth street as aforesaid, together with judgment against the plaintiffs herein for their costs herein expended, and dismissing plaintiffs' petition, and for such other and further relief as to the court may seem meet and proper."

To this answer, the plaintiffs filed a reply in this language:

"Come now the above named plaintiffs and deny each and every allegation of new matter in defendants' answer to plaintiffs' original and supplemental petition set out and contained, except that part of the same which is hereinafter admitted or which is admitted in plaintiffs' said original and supplemental petition.

"Plaintiffs admit that at the time of the execution of the deed and contract referred to in defendants' answer, bearing date of August 31, 1904, from William L. Sheppard, deceased, to Joseph C. and Ella A. Wagner, there was an interest installment of $182 due on deed of trust against said property, and that other installments of interest have come due since said time, and at the date of said deed and contract there were back taxes due upon said property and that said Sheppard was unable to pay said interest and taxes and that he was in imminent danger of losing said prop-

erty through foreclosure of said deed of trust or sale for said taxes; that said Sheppard made numerous efforts to procure another loan upon said property in order to meet said obligations and save the same from foreclosure and sale, but was unable to do so; that said Sheppard believed that said property would greatly increase in value within a few years after said date, and was very desirious that said increase should inure to his benefit; that said Sheppard being unable to make any other agreement that would save said property from sale or foreclosure as aforesaid, made said deed and entered into said contract with said defendants; that said Sheppard was the stepfather of defendant, Ella A. Wagner.

"Plaintiffs admit that said William L. Sheppard and said defendants entered into the contract referred to in defendants' said answer, said contract bearing date of the 12th day of July, 1905, and state that said contract was entered into for the sole purpose of securing the payment of grading and other improvements necessarily resulting from the cutting of Baltimore avenue through and past said property and thereby protect the interest of said Sheppard, now the interest of these plaintiffs, in said property.

"Plaintiffs admit that during the year 1904 there was a proceeding had in Division No. 5 of this court entitled, 'In the matter of Grading Baltimore Avenue from Fourteenth to Sixteenth Streets in Kansas City, Missouri,' and numbered 19279, and that by said proceeding said Sheppard was adjudged to be damaged on account of said cutting of said Baltimore avenue over and above the benefits to him in the sum of $1503.94 and that the said Sheppard procured judgment for the same; that said judgment for $1503.94 was for damages to the property herein and runs with the property, and is therefore of right the property of plaintiffs herein.

"Plaintiffs aver that the proceedings referred to in defendants' answer wherein R. S. Crohn as plaintiff filed an intervening petition in Division Five of this court, and the decree rendered therein in no way affects the rights or interests of the plaintiffs herein, plaintiffs not being parties thereto.

"Plaintiffs state that they know nothing of the proceedings referred to in defendants' said answer in regard to the grading of Fifteenth street from Baltimore avenue to Main street; that this court should require defendants to make strict proof of the same.

"Plaintiffs aver that they have no knowledge of the amount of expenditures made by said defendants for interest upon said property as set out in said answer, and that this court should require strict proof of the same.

"Wherefore, plaintiffs pray the court to adjudge and decree as in plaintiff's original and supplemental petition prayed for and in addition thereto that the court adjudge and decree the rights of the parties hereto in and to said $1500 now in the hands of the circuit clerk, and also the rights of the parties with regard to the grading of Fifteenth street from Baltimore avenue to Main street, if any, together with all necessary costs attached thereto, and that defendants be required to give a strict accounting of the same and that the defendants be required to give a strict accounting of all the alleged expenditure on account of said property as set out in said answer and the rights of the parties hereto with respect to the same be adjudged in this proceeding, and for such other and further relief as to the court, the premises considered, may seem just and proper."

Upon these pleadings the plaintiffs filed their motion for an interlocutory judgment and an order for an accounting. This motion the court overruled. Defendants then moved "for judgment in favor of defendants and dismissing plaintiffs' petition upon the

pleadings herein." This motion the court sustained, and entered its judgment thus:

"And it is considered, ordered and adjudged by the court that the plaintiffs' suit herein be dismissed, and that plaintiffs take nothing herein and that the defendants have and recover of and from the plaintiffs their costs herein expended and have execution therefor, to which action of the court in. sustaining said motion plaintiff at the time excepted."

In due time and in proper form the plaintiffs took their appeal to this court.

I. At the outset we are confronted with the contention of defendants that the record proper fails to show the signing and filing of a bill of exceptions in this case. Counsel urge that for that reason we only have the record proper before us. We think counsel have misread this record. Under the heading of "Abstract of Record" on page 32 of the printed abstract we have this entry.

"Afterwards, on June 15, 1908, the following proceedings were had in said cause:

"Be it remembered that on the 54th day of the regular April Term, 1908, of the circuit court of Jackson county, Missouri, at Kansas City, the same being the 15th day of June, 1908, the following proceedings were had and made of record in the cause entitled:

"No. 28357.

"Samuel C. Sheppard et al.

vs.

"Joseph C. Wagner et al.

"Now on this day comes the parties and plaintiffs' motion for a new trial is by the court taken up, considered and overruled, to which said ruling of the court plaintiffs duly except, and plaintiffs thereupon present to the court their bill of exceptions herein, *which said bill of exceptions is by the court allowed by the said judge and sealed and by the court ordered to*

*be, and is now filed and made a part of the record in this cause."*

On page 33 begins the bill of exceptions under the proper heading "Bill of Exceptions" and to it is affixed the signature of the trial judge as appears on page 38 of the printed abstract before us.

From this it appears that the parties have separated matters of record proper from matters of exceptions. From the record proper it appears that the bill of exceptions was filed in open court, and by the court made a part of the record in the cause. Nothing more is required. [Ray County Savings Bank v. Hutton, 224 Mo. 42, and cases therein cited.] Nor is this record deficient under the rule in Harding v. Bedoll, 202 Mo. l. c. 634, and cases following that case.

This contention is therefore overruled.

II. The whole case being here upon the pleadings, and such pleadings being voluminous as to facts, we were forced to make the statement longer than desirable. The issue as to the merits is clearly drawn. Plaintiffs contend that the whole transaction shows the deed, although absolute upon its face, to be a mortgage. Defendants contend that the deed is absolute and conveyed the fee simple title to them, but that the contracts constitute an agreement to reconvey or resell to the said Sheppard, within three years. Defendants' counsel denominate the transaction to be a conditional sale. However, if the whole transaction does not show this deed to be a mortgage, the plaintiffs have no standing, and a determination of this question ends the case.

We are firmly of the opinion that the matters pleaded clearly show that the deed in question should be declared to be a mortgage. We shall approach the discussion of the matter first from the face of the written instruments themselves. We must take these instruments both in their length and breadth. In other

words, we must see what can be gathered from the four corners thereof, and if we conclude that the deed in question was once a mortgage it must so remain. The equitable doctrine "once a mortgage, always a mortgage" is thoroughly and persistently recognized. In determining the question in hand we have other rules which must be borne in mind. Thus in the very early case of Brant v. Robertson, 16 Mo. l. c. 143, it is said:

"In determining whether the transaction was a conditional sale or mortgage, the first fact to be ascertained is, whether the relation of debtor and creditor existed previous to, *or was created at the time of the conveyance.* It may be taken as universally true in law that no conveyance can be a mortgage, unless it is made for the purpose of securing the payment of a debt, or the performance of a duty, either existing at the time the conveyance is made, *or to be created,* or *to arise in the future.* If the payment of the money is the object of the security or conveyance, then there must exist a duty to pay the money. Not that it is necessary that the duty should be evidenced by a bond, or covenant, or note, or other security. A mortgage may as well be given to secure the payment of a loan, where the whole evidence of the debt rests in the memory of witnesses, as if it could be shown by the most solemn instrument. So, an absolute deed may be shown to be a mortgage by showing that it was made as a security for the debt or the performance of the duty, whatever may be the evidence of the debt or duty."

The italics above are ours.

Along the same line is the case of Bobb v. Wolff, 148 Mo. l. c. 344, whereat we said:

"While the courts have applied many tests to disclose the true nature of the transaction, whether an absolute deed or a mortgage, the one sure test and essential requisite has ever been 'the continued exist-

ence of a debt' from the grantor to the grantee in the deed. If there is no debt, the instrument cannot be a mortgage whatever else it may be, but if the investigation develops an existing indebtedness by the grantor to the grantee, evidenced by bond or note or like agreement, not discharged by the conveyance, the courts have with great unanimity construed the deed to be only a mortgage.

"Subordinate to this prime test it has been held as significant, the existence of a collateral agreement by the grantor to pay money; his liability to pay interest; the surrender and cancellation of the evidences of debt, or suffering them to remain outstanding; the substitution of other instruments of indebtedness in place of the old; the fact that the grantor is left in possession and an application or negotiation for a loan pending the transaction."

Other cases might be cited, but these we take it sufficiently announce the guiding rule. Tested by this rule how stands the instruments of writing before us? Reverting to the contract made at the time the deed was made what does it show as to the intent of the parties? The deed of course is absolute upon its face, and that the contemporaneous contract was entered into for a purpose is evident. Was it entered into to show that the deed was executed as a mere security for an existing debt, or a debt created at the time, or a debt to be created in the future, or was it executed for other and different purposes? If it was executed to secure an existing debt or to secure a debt created at the time, or to secure a debt to be created in the future but agreed upon and understood at the time, then the deed is a mortgage. The first thing that stands out boldly in this contract is that there were matters and things "which are not and cannot be expressed in said deed." So reads the contract. This of itself shows that the deed was not in fact what it appeared to be upon its face. Of course this first

statement in the contract might not, within itself, enable us to say that the deed was a mortgage, rather than a conditional sale, yet it is a strong circumstance, which must be taken with other recitals in the contract. In fact the mere making of a contemporaneous contract, in which reference is made to the deed, is a fact of vital importance.

But going further into this contract, we find that it fully provides for the creation of a debt to be due by Sheppard to the Wagners. The contract says that if Sheppard sells this property he must sell it for enough over and above incumbrances to repay the Wagners for what they have paid out on the property by way of repairs and otherwise, except the interest and taxes. The interest and taxes under the contract were to be paid by the Wagners and they were to be repaid therefor by having "the use of said property and the rent coming from any part thereof." Taking this whole provision of the contract it shows that the parties contemplated that Sheppard would at least become indebted to the Wagners for whatever they paid out on the place for repairs and things other than the interest on the loan and the taxes. Not only so but there is a provision in the contract which contemplates that there might be an indebtedness for this interest and taxes, for the contract provides that "if said property should be sold during the years for which first parties [the Wagners] have a right to occupy same and collect rents as aforesaid, first parties shall be reimbursed out of the proceeds of the sale of same, pro rata." This clearly contemplates an obligation to pay to the Wagners. But aside from this, even if we go to the provision as to the payment of interest and taxes in the broadest scope, it contemplates an obligation to pay to the Wagners. It not only provides for the creation of a debt from Sheppard to the Wagners to the amount of the interest and taxes each year, but it provides the manner of pay-

ment of such debt by the said Sheppard. In other words, this clause of the contract creates the debt and provides the means and method of payment. The amount of this annual debt is fixed at the amount of taxes and interest. The means of payment is the use of the premises. So that even this clause creates a debt from Sheppard to the Wagners and the contract for this and the other reasons above stated, creates a debt and brings the case fully within the rule announced in the Brant and Bobb cases, supra. But as said in the Bobb case, supra, the question of a debt is not the only test when we are determining the question of mortgage or no mortgage. There are other tests, although they be subordinate to this prime test. Let us therefore further scan this contract for other and further evidences of a mortgage.

Going a step further the contract creates the relation of landlord and tenant, a thing wholly at war with the idea of a deed absolute, or even with the idea of a gift *inter vivos*. The contract gives the use of the property to the Wagners for the annual interest and ordinary taxes. Special taxes and their liens are left to Sheppard and the property. The contract says: "It is further agreed that if said first parties shall expend any sum for repairs on said property or *for any other purpose in connection therewith,* than the taxes and interest aforesaid, the same shall be repaid to them out of the proceeds of the sale of the property, and that any amount so paid shall be a charge and lien against said property in favor of the first parties." This provision is very broad. Under it special taxes could be paid and the land would be charged therewith, and Sheppard would be liable therefor. The clause goes further, however, than merely creating the existence of debtor and creditor. It speaks of and gives to the Wagners a lien for the debt, a thing wholly at war with the idea of ownership in them. It is hardly reasonable to say that they would be reserving a lien

upon their own property for making repairs thereto and discharging special tax or other liens thereon.

In addition to all these things the very last clause of the contract provides for a redemption of the property by Sheppard within three years. "Redemption" is a term peculiarly applicable to mortgages. It conveys the idea of retaking that which is your own, but which is temporarily held by another. We do not get the idea of a "purchase" or "repurchase" through the word "redemption." The use of such a word is not favorable to the idea of a conditional sale. On the other hand it leaves the impression that the equitable title had been reserved in the grantor, and the bare naked legal title conveyed to the grantee.

All these matters strongly impress this first transaction (the deed and first contract) with the idea of security for debt rather than a sale of any character.

III. Defendants, however, rely upon this last clause and the one preceding it for their construction of the contract. These two clauses read:

"It is further agreed that if second party should die during the three years aforesaid and before said property shall be sold in accordance with this contract, all his rights and interest in and to said property and under this contract shall cease at his death and absolutely vest in first parties.

"It is agreed and understood that the deed of conveyance aforesaid is made and delivered to first parties for the purpose of vesting title in fee simple in first parties with a right of redemption in second party in the manner herein provided within the three years aforesaid."

The first of these clauses recognizes that Sheppard had some "rights and interest in and to said property," and the last clause, as above discussed, uses the word "redemption." All that goes before in the contract looks to securing the Wagners for their outlay upon the property. In the light of the law we do

not believe these two clauses sufficient to change this conveyance from an equitable mortgage to an absolute or conditional sale.

At an early date, in the case of Wilson v. Drumrite, 21 Mo. l. c. 328, this court through LEONARD, J., said: "By the English law a conveyance of property as security for the payment of money, is a redeemable mortgage, no matter what the parties intend in reference to the right of redemption. This right is inseparably incident to such a conveyance, and can only be extinguished by a judicial sentence of foreclosure or a sale pursuant to the agreement of the parties. The equity of the mortgagor is said to be part of the law of the land, so that it cannot be provided against or controlled by the contract of the parties; and every effort that has been made to create an irredeemable security for money, by a conveyance of property, has been met and frustrated by the courts. [Seton v. Slade, and Hunter v. Seton, 7 Ves. Rep. 272; 1 Hilliard on Mortg., ch. 4, sec. 1, and cases there cited.]"

Speaking of a conditional sale, the same learned judge, LEONARD, says: "Undoubtedly a party may make a sale of his property with the privilege of repurchasing it at a specified price, or, as it is usually termed, a conditional sale; but he cannot, under the color of such a transaction, create an irredeemable security for money. It is said by RUFFIN, Justice, in Poindexter v. McCannon (1 Dev. Eq. Rep. 379-380) : 'A mortgage and a conditional sale are nearly allied to each other. . . . The difference between them is, that the former is a security for a debt, and the latter is a purchase for a price paid, or to be paid, to become absolute on a particular event, or a purchase, accompanied by an agreement to resell upon particular terms. . . . The only difficulty is to ascertain the character of the transaction. When it is once determined to be a mortgage, all the consequences of account, redemption and the like, follow, notwithstanding any

stipulations to the contrary; for the power of redemption is not lost by any hard conditions, nor shall it be fettered to any point of time, not according to the course of the court.'"

In the case at bar nothing is said as to a repurchase. No specified price is fixed for a repurchase. In fact no price was fixed for the original sale, save "one dollar and other good and sufficient consideration" and this consideration is denied in the record before us.

Let us, however, take a further step. This last clause undertakes to limit the right of redemption to three years. We had a similar question before us in the case of Reilly v. Cullen, 159 Mo. l. c. 331, and VALLIANT, J., expressed the views of this court thus:

"But the difference between the parties grows out of their construction of the last sentence in the agreement, viz.: 'This agreement to last for sixty days from this date.' Both plaintiff and defendant at the trial seemed to construe that clause to mean that at the end of sixty days if the property was not sold, Reilly's interest in it was gone forever. Hence, the plaintiff undertook to prove by oral testimony that the parties agreed to extend that period for sixty days longer. The court ruled that that was essential, but that it could not be proven except by written agreement, and the nonsuit followed. When we read the deed and the defeasance together and reach the conclusion as we must, that they constitute only a mortgage for the security of the indebtedness named, then the maxim applies in full force, 'once a mortgage always a mortgage,' and the right of the mortgagor is never extinguished until by regular foreclosure and sale. And this is the law, no matter if the parties both intended otherwise; it is a condition that arises not by contract, but by operation of law, and often in spite of contract. The eminent commentator first above quoted says: 'In ascending to the view of a mortgage in the contempla-

tion of a court of equity we leave all these technical scruples and difficulties behind us. Not only the original severity of the common law, treating the mortgagor's interest as resting upon the exact performance of a condition, and holding the forfeiture or breach of a condition to be absolute, by non-payment or tender at the day, is entirely relaxed; but the narrow and precarious character of the mortgagor at law is changed, under the enlarged and more liberal jurisdiction of the courts of equity. . . . The equity of redemption grew in time to be such a favorite with the courts of equity, and was so highly cherished and protected that it became a maxim, that ''once a mortgage, always a mortgage.'' The equity doctrine is, that the mortgage is a mere security for the debt, and only a chattel interest, and that until a decree of foreclosure, the mortgagor continues the real owner of the fee.' [4 Kent's Comm., star page 158-9.]

''Another learned text-writer expresses it thus: 'So fully recognized and protected are the equitable rights of the mortgagor, that he is relieved from his own express agreement that upon failure to pay the mortgage debt at the time stipulated, his estate shall be forfeited, such agreements being held utterly void in equity. . . . It matters not how strongly the parties may express their agreement that there shall be no redemption, the intent being contrary to the rules of equity, it cannot be carried into effect.'· [2 Jones on Mortgages, sec. 1039.]

''Therefore, even if the parties understood and intended by the clause now under discussion that at the end of sixty days, if Reilly had not sold the land, his interest should be gone forever, it would be absolutely void for that purpose.''

If the deed was in fact a mortgage—a mere security for the payment of a debt—then under this case the limitation of three years in the last clause is a nullity, and what is said of this limitation to the right

to redeem applies with equal force to the limitation in the preceding clause. It must be borne in mind that if a mortgage at all, it is an equitable mortgage, and the rules of equity are the ones to be applied. Other cases might be cited but these suffice. Taking the deed and this first contract made at the same time the transaction bespeaks a mortgage rather than a sale. If so, we need not look to the second contract. If these two instruments brand the transaction as a mortgage it so remains until foreclosed in the courts, or otherwise adjusted by an agreement of the parties. The second contract which we have fully set out in the statement fully recognizes the first contract, but does not undertake to dispose of the equity of redemption in any manner. It leaves such equity of redemption just where it was under the first contract.

We therefore repeat that we see not the elements of a conditional sale in this transaction, but viewing the whole thing the deed is clearly a mortgage, and the court *nisi* was in error in holding to the contrary, as he in effect did, when he sustained the defendants' motion for judgment on the pleadings. We doubt much whether under the facts of this case, either of the two motions for judgment were appropriate in this case. The defendant's motion should have been overruled for the reasons stated above, and for this error the judgment must be reversed and the cause remanded.

IV. Much is said in the briefs about the defendants' taking advantage of an old blind man in his extremity, but we shall not go into that phase of the case. Much could be said, and the books are full of cases which enlighten the subject. However, with the views we have of the contract itself, a discussion of this question would be but adding length to an opinion already too long.

Judgment reversed and cause remanded to be proceeded with according to the views in this opinion expressed. All concur.

## ON MOTION FOR REHEARING.

GRAVES, P. J.—Plaintiffs have filed a vigorous motion for rehearing, from which it appears that counsel for plaintiffs clearly misapprehended the opinion of this court, especially that part thereof remanding the cause. The opinion closes with this language: "Judgment reversed and cause remanded to be proceeded with according to the views in this opinion expressed." As stated in the original opinion the cause was somewhat irregularly tried below. Both sides filed motions for judgment on the pleadings, and this, too, when under the pleadings there were issues of fact attempted to be raised. For instance, we have in the answer this defense pleaded, or, more properly speaking, vaguely pleaded:

"That said Sheppard was the stepfather of the defendant, Ella A. Wagner, he having married her mother in the early infancy of said Ella A. Wagner, and that he reared her and cared for her from her said early infancy, and that she was kind and obedient to him and treated him as a dutiful daughter, and attended to the housework for his household, and aided him in his business, and lived with him until the time of his death, and cared for him in his declining years. And that he was greatly attached to her, and in consideration of her remaining with him and caring for him agreed and had intended, for many years before his death, to leave all his property to her when he should die."

In the reply to this answer we have among other things a denial of all new matter in the answer. If this pleads a separate and distinct agreement, and one other than the instrument which we declare to be a mortgage, as we think the pleader was attempting to do, then there was an issue of fact there untouched by the motion for judgment and untouched by anything which we have said in the opinion.

In other words, we were of opinion then and are of opinion now, that the defendant Ella A. Wagner was attempting to show her title through two contracts, i. e., the one which we declare to be a mortgage, and the other this independent agreement fully performed on her part to leave her the property at the death of Sheppard. The latter is vaguely pleaded, but when we remanded the case for new trial we had in view the fact that the answer might be made more specific and the facts as to this second agreement and source of title tried out. This was one among several things which prompted a remanding of the cause. Our judgment was not a remanding of the cause with directions to enter any specific judgment, nor to proceed in any particular way.

What we did intend to do and intend now to do is to say that upon the face of the deed and contracts in evidence, the alleged deed is a mortgage. That is the only question foreclosed by the opinion. If the defendant Ella Wagner can show her right to this property through another valid agreement and transaction, the case is still open for that purpose.

With these remarks, the motion for rehearing should be and is overruled. All concur.