MEYER MILLING COMPANY, Appellant, v. T. E. BAKER.—43 S. W. (2d) 794.

Division One, November 20, 1931.

*Mann & Mann, John W. Miller* and *W. P. Elmer* for appellant.

1248

*John H. Keith* for respondent.

RAGLAND, J.—This cause was certified to this court by the Springfield Court of Appeals pursuant to Section 6, Article VI, of the Constitution—Amendment of 1884. The action was brought by the seller under a contract of sale against the buyer for the damages which the parties to said contract had stipulated should be recoverable for a breach. At the conclusion of the plaintiff's case in chief the trial court indicated that it would direct a verdict for the defendant, whereupon plaintiff took an involuntary nonsuit with leave. The court having thereafter refused to set aside the nonsuit, this appeal followed.

The contract giving rise to the controversy, insofar as it has any bearing on the questions at issue, was as follows:

"Contract No. 678.                                     Date June 22, 1925
        The Meyer Milling Company                    St. Louis, Mo.
            Springfield, Mo.                          Nashville, Ill.
sell (s) and T. E. Baker buy (s), the following commodities,
F. O. B. cars Springfield, Mo. freight allowed to Bunker, Mo., for shipment within sixty (60) days, payable on Sight draft with bill of lading attached, through Bank of Bunker.   .   .   .
2000 new 98# Blp. Mixed Corn Chops @ 2.59 per bag
Plus 5 Mos. accrued carrying chg                    .10      2.69  .  .  .
Carrying charges 2c per bag for each thirty days or fraction after July 1, 1925. Final delivery to be permitted not later than September 1, 1925.   .   .   .

"Buyer shall furnish seller shipping instructions at least fourteen (14) days before the time of shipment.

"Rights of Seller.   .   .   .   If the buyer fails to furnish shipping instructions or packages as herein provided, the seller may (1) cancel the contract, or (2) terminate the contract, the buyer to pay to the seller the difference between contract price and the seller's cost of replacement, or (3) extend the contract thirty (30) days, the buyer to pay the seller, as a carrying charge, one-third of one cent per

1250

day per barrel on flour and one cent (1c) per day per ton on feeds; demand draft covering such charge may be made upon buyer when shipping instructions are due. . . .

"Rights of Buyer. If shipments are not made by the seller within the time of shipment unless for causes beyond seller's control, buyer may (1) cancel the contract, or (2) terminate the contract, the seller to pay the buyer the difference between the contract price and the market value of the commodity covered by this contract at the date of default at the point of delivery, or (3) extend the contract thirty (30) days, subject to a reimbursement charge to the buyer of one-third of one cent per day per barrel on flour and one cent (1c) per day per ton on feeds. . . ."

According to the construction placed upon the contract by the parties: the whole of the commodity therein mentioned, namely, 2000 sacks of corn chops, was to be delivered by the seller and accepted by the buyer between June 22nd and September 1st, 1925; the buyer had the right to have the same delivered within that period in such portions from time to time as he by shipping instructions given the seller might direct; the seller could make no shipment or delivery until it had received shipping instructions, but upon receiving such instructions it was bound to make shipment in accordance therewith within fourteen days thereafter; as the seller could make no shipment without shipping instructions and as he was entitled to receive such instructions at least fourteen days before the time of shipment, the buyer was bound to give the shipping instruction covering the whole of the 2000 sacks of chops not later than August 17th—fourteen days prior to September 1st. As this construction is the one put upon the contract by the parties themselves, both before and since the controversy between them has arisen, we will assume that it is the proper one. It will be noted, however, that the contract further provided: "If the buyer fails to furnish shipping instructions . . . , the seller may . . . terminate the contract, the buyer to pay the seller the difference between the contract price and the seller's cost of replacement;" and further, "If shipments are not made by the seller within the time of shipment . . . buyer may (1) cancel the contract, or (2) terminate the contract, the seller to pay the buyer the difference between the contract price and the market value of the commodity covered by this contract, etc."

Shortly after the contract was entered into respondent, the buyer, gave appellant, the seller, directions to ship 111 bags of the corn chops. The 111 bags were shipped, accepted and paid for. No further shipping directions were given until August 8th. On that date respondent ordered 410 bags. Appellant was then having the "rolls" of its mill sharpened and for that reason was unable to make the shipment directed until August 25th. About two hours after the

consignment had been delivered to the carrier on that day, appellant received a telegram from respondent cancelling the contract and also the order for the 410 bags, unless appellant would ship same at the then current market price, the market price of corn chops having greatly declined following the making of the contract. While the car of chops was in transit and later on the track unaccepted at Bunker, its destination, a number of letters and telegrams were exchanged between appellant and respondent. In these respondent insisted at all times, as he does now, that he had a right to cancel the contract on account of appellant's failure to ship chops on August 22nd. Appellant countered by pointing out that respondent, in failing to give shipping instructions for the remainder of the 2000 bags on or before August 17th, had first breached the contract, saying in that connection that in shipping the 410 bags on August 25th it had assumed that respondent desired an extension of the contract for thirty days, which it was willing to give, but that if respondent did not desire such extension it would consider the contract as terminated on August 17th and demand a settlement as of that date. After futile efforts to compromise their differences appellant sold and respondent bought, wholly independent of the contract in controversy, the 410 bags of chops at $2 per bag, both parties agreeing that their unadjusted rights under the contract should in no wise be affected by that transaction.

The petition after setting forth the contract alleges that it was breached by defendant on the 17th day of August, 1925, in that defendant did not on or before that date give plaintiff shipping instructions as to the 1889 bags of chops, and that thereupon plaintiff, in accordance with the provisions of the contract, exercised its option to terminate the contract and hold defendant for the difference between the contract price and plaintiff's cost of replacement, averred to be $1204.24.

The pleading on the part of defendant consists of a general denial and a counterclaim. The counterclaim is based on the alleged breach of the contract by plaintiff and the alleged loss of profits to defendant occasioned thereby. The counterclaim also contains a paragraph in which it is alleged that as a part of the consideration for the purchase by defendant of the 410 bags of corn chops at Bunker plaintiff agreed to release him from all further liability under the contract of June 22nd. This of course was purely defensive.

Upon appellant's taking an involuntary nonsuit in the court below, the respondent abandoned his counterclaim.

The grounds upon which the trial court ruled that the facts disclosed by the evidence did not warrant a recovery by plaintiff are not discoverable from the record. The facts upon which the ruling was based may be epitomized as follows: Respondent first breached

the contract on August 17th by having failed to give appellant on or before that date shipping instructions for the entire commodity covered by the contract; thereafter on August 22nd the contract was breached by appellant in failing to ship 410 bags on that date; appellant by shipping the bags last mentioned on August 25th waived respondent's prior breach; on the same day respondent attempted to cancel the contract on account of appellant's breach; thereupon appellant attempted to retract its waiver and exercise its option to declare the contract terminated on August 17th on account of respondent's breach and hold him for the stipulated damages. Not having the benefit of the learned trial court's views, we of necessity must resort to the aid of general principles in determining the correctness of its ruling.

The contract was entire, and not severable. It so appears on its face and the parties unquestionably so treated it. Its covenants were not concurrent, nor were they in all respects dependent. The covenant to give shipping instructions was independent; the covenant to ship within fourteen days after the receipt of instructions was dependent: the latter covenant was dependent on the former. When respondent breached his covenant to give shipping instructions, a right of action accrued to appellant as and for a breach of the entire contract. It was not necessary for it to further perform. Notwithstanding, it tendered performance three days after such performance was due according to the terms of the contract. Respondent, taking advantage of the belated tender, attempted to terminate the contract on the ground that it had been breached by appellant. But respondent, having first defaulted, and being still in default, without having made any offer of reparation, could not terminate the contract. "A party, when in default, has no power to say the contract is at an end, and refuse to proceed with its execution." [Myers v. Gross, 59 Ill. 436, 439.] See also Graf v. Cunningham, 109 N. Y. 369; Wright v. Reusens, 31 N. E. (N. Y.) 215; Sicklesteel v. Edmonds, 147 N. W. (Wis.) 1024; Fairchild, etc., Co. v. Southern, etc., Co., 158 Cal. 264; 3 Williston on Contracts, sec. 1468.

The act of appellant in shipping the 410 bags after respondent had defaulted in giving shipping instructions clearly manifested an intention on its part to waive respondent's breach. Could appellant withdraw such waiver upon respondent's refusal to further proceed under the contract? It is a principle of general recognition that, so long as the party who was originally in default has not altered his position in reliance upon the apparent intention of the party who is not in default to treat the contract as in effect, the latter may change his position and treat the contract as discharged. Clearly respondent did not alter his position in reliance on appellant's conduct amounting to a waiver. On the contrary he was hunting for a loop hole through

which he might escape from contractual obligations which had become extremely onerous. Manifestly the waiver was made with the view that respondent would in good faith carry on under the contract; when it conclusively appeared that he would not, appellant was fully justified in withdrawing its waiver and declaring the contract terminated on the date it was breached by respondent. [Sicklesteel v. Edmonds, supra; 5 Page on Contracts, sec. 3040.]

Under the views herein expressed plaintiff is entitled to recover under its petition, if the facts are in accordance with the evidence which it produced on the trial below. The case should have gone to the jury.

The judgment is accordingly reversed and the cause remanded. All concur.