[1] This is a suit for an injunction to restrain defendant, Roy F. May, a former salesman for plaintiff, Henges Company, Inc., from violating the provision of a contract prohibiting him, for the period of one year from the termination of his employment under such contract, from engaging in the same or similar business as that carried on by plaintiff in the territory over which his employment had extended.
[2] Plaintiff, which has its principal place of business in the City of St. Louis, is engaged in the business of selling and installing acoustical ceilings, floor coverings, partition walls, sun screens, and rock wool insulation in a territory embracing substantially all of Missouri and Kansas and a part of Illinois.
[3] Defendant had already been in plaintiff's employ for several months when the contract in question was executed on October 1, 1946.
[4] The contract fixed defendant's compensation at agreed percentages of the sales price of materials sold by defendant, subject to the qualification that such compensation should be considered to have been earned only when the materials sold were delivered by plaintiff, or if the sale was of materials requiring installation, when the installation had been completed by plaintiff. It was further provided that all earned compensation should be due and payable on January 2nd of each year, but with the right reserved to defendant to draw against his account to the extent of $175 semimonthly.
[5] It was provided that defendant's employment might be terminated for any reason upon thirty days' notice in writing by either party to the contract, and that the terms of the contract might be changed from time to time by mutual consent of the parties, but that any change of one or more of the provisions should not affect the remaining provisions nor be construed as an abandonment of the agreement.
[6] Following the execution of such contract defendant continued to work as a salesman under it until May 1, 1948, when, by mutual agreement between him and plaintiff, he was made manager of plaintiff's newly created residential department. Plaintiff's business had previously been confined to the commercial field, and the entry into the residential field was an entirely new venture separate and distinct from the business that had formerly been carried on. Defendant's employment as manager of the residential department was purely by oral agreement, and his compensation was tentatively increased to $450 a month. It was understood that until a salesman could be found to replace him in the commercial department he would continue to do as much work as was possible in his old territory, and he solicited prospects until the middle of July, 1948, when one Drumm was employed under a contract identical with that which defendant had had except that Drumm's drawing account was fixed at $200 semimonthly.
[7] In the early part of September, 1948, defendant orally informed plaintiff that he intended to leave its employ, and after considerable discussion regarding the application of the contract of October 1, 1946, defendant submitted his written resignation on September 23, 1948, effective in such time as plaintiff could replace him as manager, or in not to exceed thirty days. On October 4, 1948, defendant severed his connection with plaintiff, and shortly thereafter entered the employ of a competing *Page 112 
company engaged in the same business as plaintiff in a part of the same territory. The present suit to enjoin defendant from engaging in such employment was instituted on October 15, 1948.
[8] The whole issue in the case was whether the written contract of October 1, 1946, had been mutually canceled and rescinded by the parties on May 1, 1948, when defendant took over the position of manager of plaintiff's newly created residential department, so that the provision of the contract prohibiting defendant from accepting competitive employment for the period of one year after the termination of his employment under such contract was no longer effective. Plaintiff's cause of action was predicated upon the theory that the contract itself was not terminated notwithstanding the termination of defendant's employment as a salesman under the contract, and that upon defendant's acceptance of competitive employment during such period of one year, plaintiff became entitled to have him enjoined from so doing. Defendant insisted, on the other hand, that the contract was abandoned in its entirety by mutual agreement of the parties upon the change in his position with the company, and that the parties had never contemplated that the salesman's contract should continue to be effective after defendant had taken on the new duties wholly unrelated to his former employment.
[9] The court found that notwithstanding the change in defendant's position as of May 1, 1948, the restrictive provision of the contract had continued in force, and the court therefore rendered a decree enjoining and restraining defendant from engaging in competitive employment in his former territory for the period of one year from the termination of his employment as a salesman under the written contract, or until May 1, 1949. Following an unavailing motion for a new trial, defendant gave notice of appeal, and by subsequent steps has caused the case to be transferred to this court for our review.
[10] Our own consideration of the case impels the conclusion that the lower court's decision was correct.
[11] There is of course no doubt of the fact that the parties to a contract may lawfully rescind, abrogate, or terminate it. Facendini v. Hillman, Mo.App., 298 S.W. 1073; Stoedter v. Turner, Mo.App., 237 S.W. 141. Persons competent to contract can as validly agree to rescind a contract already made as they could agree to make the contract originally. 12 Am.Jur., Contracts, sec. 431. The agreement to rescind is itself a contract, and all that is required to make the rescission effective is that it be by mutual agreement of the parties, and be supported by a sufficient consideration, in which connection it is highly material whether the contract be wholly executory or partially executed. 17 C.J.S., Contracts, §§ 389, 391. Nor is it in all events essential that the parties' assent to the rescission shall be established by proof of express agreement to that effect, but it may as well be implied from the acts and conduct of the parties with respect to the subject matter with which the contract dealt. Peoples Finance Corporation v. Buckner, 344 Mo. 347, 126 S.W.2d 301; Chouteau v. Jupiter Iron-Works, 94 Mo. 388, 7 S.W. 467; 17 C.J.S., Contracts, § 388; 12 Am. Jur., Contracts, sec. 431.
[12] But while the parties may lawfully rescind or abrogate their contract, whether they have done so in a given case presents an entirely different question.
[13] There were only two witnesses in the case, the one, J. G. Henges, the president and chief officer of plaintiff corporation, and the other, defendant himself, who was called to the stand as a witness for plaintiff.
[14] Henges testified positively and unequivocally that there was never any agreement between him and defendant for the cancellation of the written contract. Defendant's testimony, on the other hand, was quite indefinite and uncertain as respects this feature of the case. While he testified that there was some discussion between him and Henges in regard to the further application of the written contract, he could not recall whether such discussion had been had before or after he assumed his duties as manager of the residential department, nor did he remember precisely where any *Page 113 
such discussion had taken place. As a matter of fact, when he had suggested to Henges that since his duties as salesman were to be entirely discontinued he saw no reason why the contract should be effective in the future, he admittedly could "not exactly" remember what Henges had said in reply. So far as the oral testimony was concerned, the weight of the evidence was decidedly against the idea that the contract had been rescinded by express agreement of the parties.
[15] Nor does the subsequent conduct of the parties indicate a mutual intention that the contract be treated as abrogated.
[16] What defendant fails to comprehend is the distinction between the termination of the contract itself and the termination of his employment under it. The contract necessarily contemplated the possible termination of defendant's employment as a salesman, and then provided that he should be barred from engaging in competitive employment for the period of one year thereafter. The restrictive provision could never have taken effect until after his employment under the contract had been terminated.
[17] The effect of the rescission of a contract is to extinguish it as effectually as if it had never been made, and to put the parties back in the respective positions they had occupied before the contract was executed. In other words, once the contract is lawfully rescinded, the parties are restored to their original rights with respect to the subject matter, and are no longer bound by the contract in regard to their subsequent actions. 17 C.J.S., Contracts, § 392; 12 Am.Jur., Contracts, sec. 455. But in this case defendant testified that for the few months he continued to do work as a salesman in his old territory after assuming his new position, he was paid in accordance with the contract for the orders he obtained; and he further testified that there were still other orders he had taken upon which delivery had not as yet been made, but upon which he expected to be paid his commissions when the orders were filled and his commissions earned.
[18] There is no such thing as a partial rescission in the sense that one may repudiate a contract in so far as its terms are unfavorable to him, and at the same time claim its benefits as regards the favorable provisions. 17 C.J.S., Contracts, § 403; 12 Am.Jur., Contracts, sec. 444. If the contract in question had been terminated so that its restrictive provision was no longer operative, it could not have been in effect for the purpose of entitling defendant to receive his agreed commissions as they accrued. It is no doubt true that when the contract was executed, the parties did not have in mind that defendant's employment as a salesman would be terminated by his acceptance of a different position with plaintiff itself. Nevertheless the restrictive provision now invoked against defendant was made to take effect upon "the termination, for any cause whatever, of his employment hereunder", which meant his employment under the contract. So long as he remained in plaintiff's general employ, he could not have been guilty of engaging in competitive activity, but when he accepted employment with one of plaintiff's competitors during the period of one year after the termination of his employment under the contract, he thereby breached the restrictive provision, and gave rise to a cause of action in plaintiff's favor for injunctive relief against him.
[19] It follows that the judgment rendered by the circuit court should be affirmed; and the Commissioner so recommends.