GAY D. LANDAU, Appellant, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Respondent, No. 44463—273 S. W. (2d) 255.

Court en Banc, November 8, 1954.

Rehearing Denied, December 13, 1954.

*Hullverson & Richardson* and *William L. Mason, Jr.*, for appellant.

1136

*Lloyd E. Boas* for respondent.

HYDE, J.—This action was for damages for personal injuries. Defendant's answer contained a petition for equitable relief of specific performance of an agreement alleged to have been made for compromise and settlement of the case. The court, in a separate trial of this issue, entered a decree requiring specific performance of this agreement and dismissing plaintiff's action with prejudice. On plaintiff's appeal, this decree was affirmed by the St. Louis Court of Appeals. (Landau v. St. Louis Public Service Co., 267 S. W. (2d) 364.) We transferred the case here on application of plaintiff.

The facts are adequately stated by the Court of Appeals, including quotations from the testimony, to which we make reference and adopt. It clearly appears from this statement and from the record that, when the case came up for trial, an agreement was made in the courtroom between plaintiff and defendant to settle plaintiff's case for $1,750.00 and costs. Plaintiff admitted in her testimony that she authorized her attorney to make this agreement after he had consulted her husband by telephone and told him the amount offered. Since plaintiff has clearly admitted this agreement was made, it is not now important that the parties did not follow the procedure stated in Fair Mercantile Co. v. Union-May-Stern Co., 359 Mo. 385, 221 S. W. (2d) 751, 753, (of making a record in open court by having the parties testify to the terms of the settlement) which would take the place of a written stipulation. This is true because "compromise agreements need not be in writing unless the subject matter is within the statute of frauds." (11 Am. Jur. 248, Sec. 3; See also 15 C.J.S. 734, Sec. 17.) Defendant also agrees that the agreement was as plaintiff stated it, so there can be no issue in this case as to the agreement being made and what it was. Since, as shown by the testimony of plaintiff and her attorney, as well as defendant's attorney, there is no dispute about the terms of the settlement agreement, plaintiff's contention on this appeal that there was no meeting of the minds concerning the subject matter cannot be sustained.

1138

■ Likewise, plaintiff's contention that there was no jurisdiction to render the decree herein, because defendant had an adequate remedy at law, is without merit. This contention is that defendant could have had a judgment entered in favor of plaintiff and against it for $1,750.00, citing Allen v. Fewel, 337 Mo. 955, 87 S. W. (2d) 142. Of course, the parties could have done that at the time of the settlement. However, that could only have been done by agreement of the parties and that was not the agreement they made. Instead, there was to be a release signed by plaintiff and a dismissal with prejudice of plaintiff's action. Since defendant could never have had the case settled by entry of judgment for $1,750.00, without plaintiff's consent, this was no remedy at all under the actual facts. It was clearly a case for specific performance. (See 11 Am. Jur. 283, Sec. 35; 15 C.J.S. 771, Sec. 48; 81 C.J.S. 604, Sec. 88; Fair Mercantile Co. v. Union-May-Stern Co., supra.) Defendant had no other adequate remedy.

■ The real question in this case, which was the reason for transfer, is whether there was a rescission of the settlement agreement by the parties after it was made. Plaintiff wanted to rescind it and made this desire known to defendant; but plaintiff, of course, could not [258] alone rescind it. The basis of plaintiff's claim of rescission is that there was rescission, to which she was willing to consent, by conduct of defendant amounting to a repudiation of the agreement by sending her a release to be signed by both her and her husband. This release recited that it released not only the claim on which plaintiff sued but also all other claims plaintiff might have "from the beginning of time to and including the date hereof" and also covered all claims her husband might have for the same period which would have included his action for loss of services etc. and for property damage to his automobile which plaintiff was driving when injured. Plaintiff cites cases saying that rescission may be inferred from the acts, conduct or declarations of the parties, namely: Chouteau v. Jupiter Iron Works, 94 Mo. 388, 7 S. W. 467; People's Finance Corp. v. Buckner, 344 Mo. 347, 126 S. W. (2d) 301; Henges Co. v. May, (Mo. App.), 223 S. W. (2d) 110. Plaintiff also cites Restatement of Contracts, Sec. 280; Williston on Contracts, Sec. 698a and Sec. 1325; Corbin on Contracts, Sec. 975 and Schwear v. Haupt, 49 Mo. 225. These authorities show that, when one promissor repudiates the contract or manifests an intention not to perform, the duty of the other is terminated. These principles are, of course, well established.

■ However, even if defendant's action in mailing out this form of release could be construed as the manifestation of an intention to repudiate or breach the contract, the trouble with plaintiff's position is that she had first breached it. "A party who has himself been guilty of the first substantial breach of contract cannot rescind the contract because of subsequent refusal or failure to perform by the other party." (Williston on Contracts, Sec. 1468; Restatement of Contracts, Sec. 397, see also Secs. 274, 315, 318; 12 Am. Jur. 894, Sec. 338; 17

C.J.S. 944, Sec. 458; Sonken-Galamba Corp. v. Butler Iron & Steel Co., (C.C.A.8), 119 Fed. (2d) 283; White Oak Fuel Co. v. Carter, (C.C.A.8), 257 Fed. 54; Norris v. Letchworth, 167 Mo. App. 553, 152 S. W. 421; Trippennsee v. Schmidt, (Mo. App.), 52 S. W. (2d) 197; Meyer Milling Co. v. Baker, 328 Mo. 1246, 43 S. W. (2d) 794.) In the Meyer Milling Company case (43 S. W. (2d), l.c. 796) we said: "A party, when in default, has no power to say the contract is at an end, and refuse to proceed with its execution."

The evidence herein clearly shows that after the settlement agreement was made on June 2, 1952, plaintiff (and her husband) decided that the amount was not enough. Plaintiff's husband told her attorney early in the morning of June 3rd that the settlement wouldn't go through because he felt like the amount wasn't sufficient. Plaintiff's attorney advised defendant's attorney of this before the stipulation and release had been prepared. Defendant's attorney testified that he had previously told the girl in his office to prepare the usual release (on a blank form) to be mailed with the stipulation of dismissal which he had dictated. This release was mailed to plaintiff's attorney that evening, postmarked 7:00 P. M. June 3rd, and was received by him the next day. The release and stipulation of dismissal was returned to defendant's attorney by plaintiff's husband in a letter dated June 10, 1952, which stated as the only reason: "As you were advised prior to the time of preparing and mailing this release and stipulation, your client's offer is unacceptable, and is rejected." (This letter is confirmation of the fact of first breach by plaintiff.) In another letter of June 24, 1952 to defendant's attorney, plaintiff's husband stated: "We have carefully reconsidered your settlement proposal and have again arrived at the conclusion that it is inadequate. Accordingly, we must again decline to accept it." We must, therefore, hold that plaintiff was not entitled to rescind the settlement agreement.

It is true that after plaintiff's repudiation and breach, defendant sent her attorney a release that was not in accordance with the contract of settlement, made by the parties. However, neither plaintiff nor her husband ever requested defendant's attorney to change the form and contents of the release, tendered any different release or indicated that plaintiff would complete the settlement agreement that had been made with any form of release or under any circumstances. In fact, it was very definitely indicated to defendant that plaintiff would not sign any kind of a release for the agreed amount. Certainly defendant did not at any time refuse to prepare or accept a different release. It was not asked to do so because plaintiff's real objection was to the amount agreed upon instead of to the form and contents of the release. At least defendant appears to have been mislead by the statements of plaintiff and her husband into believing that the form of the release was not what they were really objecting to. Thus it does not seem reasonable to hold that defendant breached the settlement agreement, repudiated it or refused to perform it. Furthermore, even

"tender by one party to a contract of defective performance of a condition or promise is not necessarily such a manifestation of lack of intention or ability to perform as to make reasonable a change of position by the other party." (Restatement of Contracts, Sec. 323.) It may be further noted that there is no evidence in this case of any change of position by plaintiff or that conditions had in any way changed so as to make it inequitable to require plaintiff to perform. (See Suhre v. Busch, 343 Mo. 170, 120 S. W. (2d) 47; Parkhurst v. Lebanon Publishing Co., 356 Mo. 934, 204 S. W. (2d) 241.) The Parkhurst case quotes with approval (204 S. W. (2d) 247) the following: "Strict and literal performance of all the conditions of a contract is not invariably an essential prerequisite to a decree for specific performance." Under the circumstances of this case, we think the question of whether specific performance should be required was a matter within the sound discretion of the trial Chancellor to be determined from his view of the entire situation.

"The determination of whether specific enforcement shall be decreed and what shall be the terms of the decree rests in the sound judicial discretion of the court." (Restatement of Contracts, Sec. 359.) Some of the grounds upon which specific performance of a contract should be refused are: "(a) the consideration for it is grossly inadequate or its terms are otherwise unfair, or (b) its enforcement will cause unreasonable or disproportionate hardship or loss to the defendant or to third persons, or (c) it was induced by some sharp practice, misrepresentation, or mistake." (Restatement of Contracts, Sec. 367.) None of these apply to this case. Likewise, "specific enforcement will be refused if a condition precedent to the duty to be enforced has not and cannot be performed and is not excused, or if a condition subsequent terminating the duty has occurred." (Restatement of Contracts, Sec. 374.) It was always a very simple matter to prepare the form of release necessary to comply with the contract in this case; and as previously pointed out, defendant never refused to do so. The rule is further stated: "(1) Specific enforcement will not be decreed if the plaintiff has himself committed a material breach unless refusal of the decree will effectuate an unjust penalty or forfeiture. (2) Specific enforcement may properly be decreed, in spite of a minor breach or innocent misrepresentation by the plaintiff, involving no substantial failure of the exchange for the performance to be compelled." (Restatement of Contracts, Sec. 375.) We think that defendant's failure to prepare a proper release, under the circumstances of this case, was no more than a minor breach; or at least that the Chancellor reasonably could so find from all of the evidence before him.

Furthermore, as we stated in Cape Girardeau-Jackson Interurban Ry. Co. et al. v. Light & Development Co. of St. Louis, 277 Mo. 579, 617, 210 S. W. 361: "Ordinarily, a court of equity will not decree specific performance of a contract, unless the evidence shows that the

plaintiff has fully complied with his part thereof, but this is not an inflexible rule. If the evidence discloses the fact that the plaintiff has performed a part of his contract, and that he was ready, able and willing to perform ▇▇▇ the remainder thereof within the time specified in the contract, but was prevented from so doing by the misconduct of the defendant, or where said misconduct made it useless for the plaintiff to tender compliance within that time (Mitchell's Heirs v. Long, 5 Littell, (Ky.) 71; Minneapolis v. St. Louis Ry. Co. v. Cox, 76 Iowa 306; 22 Amer. & Eng. Ency. Laws, p. 929 (1 Ed.))— under such circumstances the court will decree specific performance if it be shown that he is able and willing to perform the balance of the contract at the time of the trial. In other words, if the undertaking of the plaintiff is joint and contemporaneous with that of the defendant, the failure of the former to perform after he has been notified by the words or conduct of the defendant, that further performance would be useless, will not prevent the court from decreeing specific performance in his favor.''

There is no claim in this case that defendant was unable to perform, which is the ground for denial for specific performance in many cases. Nor was there any time limit for defendant to do some act, the time for which had passed, when time was of the essence of the contract. (See Wimer v. Wagner, 323 Mo. 1156, 20 S. W. (2d) 650.) Even where time was made the essence of the contract, we have held that it could be waived by conduct of the parties so that plaintiff, failing to make timely performance, might nevertheless have specific performance. (Kyner v. Bryant, 353 Mo. 1212, 187 S. W. (2d) 202; Rogers v. Gruber, 351 Mo. 1033, 174 S. W. (2d) 830.) There was nothing herein to show that defendant was unwilling to perform; plaintiff refused to give it any opportunity to do so when she refused to comply with the contract she had made under any circumstances. Certainly the Chancellor could have found there was a valid excuse for failing to prepare a different release, when plaintiff had made it clear that she could not sign any release for the amount agreed upon. If it could be said there was breach by defendant, in sending a release which did not comply with the agreement made, we hold the Chancellor, under the circumstances of this case, could reasonably have found it to be only a minor breach ''involving no substantial failure of the exchange for the performance to be compelled'', because there were no indications herein that defendant was unwilling to accept the kind of a release the agreement required as soon as that matter was called to its attention. We think the Chancellor was justified in finding to the contrary, under all the circumstances of this case, and particularly because defendant showed its willingness to change the form of the release as soon as that matter came up in the trial (which was the first time it ever really came up) and did strike out all allegations concerning plaintiff's husband. We think it would be most inequitable to impose

a forfeiture of defendant's rights under the settlement, and deny it specific performance, merely because defendant prepared an improper form of release and did not correct it when never asked to do so. Undoubtedly, it was within the sound discretion of the trial Chancellor to grant a decree of specific performance upon the condition of preparing, furnishing, and accepting the proper release to comply with the contract, when defendant was willing and able to comply with the contract in all respects. The fact that they made the contract cannot be questioned and we must hold that the Chancellor did not abuse his discretion in requiring it to be performed.

▪ Likewise, for the reasons above stated, it was not decisive that defendant's cross-petition for specific performance contained allegations that the agreed amount was to be paid to plaintiff and her husband and that they both refused to sign the release. In the first place, the prayer of this cross-petition only asked that plaintiff be required to sign the release. Moreover, as soon as the question of such a joint release was raised at the trial, defendant asked leave to and did strike all allegations concerning plaintiff's husband. The decree required performance only by plaintiff of the agreement she authorized her attorney to make and which the court properly found was made. However, the provision of the decree specifying the terms of the release ▪ plaintiff is required to sign is too broad and is hereby ordered modified to leave out reference to property damage (since plaintiff claims none and her husband does) and to state only that she releases the defendant from all claims, demands or causes of action that she may have, of whatsoever kind or nature, for personal injuries on account of anything done, omitted to be done or suffered to be done by the St. Louis Public Service Company as a result of an accident occurring on the ninth day of June 1952, in the thirty hundred block of Olive; excluding claims plaintiff might have on other unrelated matters.

The decree as modified is affirmed.

*Leedy*, Acting C.J., and *Hollingsworth* and *Ellison*, JJ., concur; *Dalton*, J., dissents in separate opinion; *Anderson*, Special Judge, not sitting.

DALTON, J. (dissenting).—It is with regret that I find it necessary to dissent from certain conclusions reached in the opinion of Hyde, J.

▪ Let us assume without question that a valid contract of compromise and settlement of plaintiff's pending damage suit was entered into between plaintiff and defendant and that this is the contract specifically enforced by the decree as such decree is ordered modified by the opinion. Let us assume further that, on the next day after the settlement agreement was entered into, it was repudiated by plaintiff on the ground that the compensation agreed upon was inadequate and

that plaintiff had her counsel notified that the settlement was not to be consummated. Assuming these facts, we reach the essential question presented by this record, to wit, can a defendant, who also promptly repudiated the same contract (by insisting that another and different contract was entered into, and by demanding performance by plaintiff and her husband of a contract that was never made, and by seeking specific performance of a contract, which its own evidence shows was never made) have the aid of a court of equity to have specific enforcement of the contract that was in fact made and promptly repudiated by both parties.

The facts in this case are not in dispute. In so far as they are stated in the principal opinion and in the opinion of the Court of Appeals they are correctly stated. The record, however, shows additional facts which are not in dispute. These undisputed facts, we believe, bar affirmative relief to defendant in a court of equity. The cause turns upon the application of well established equitable principles to admitted facts, to wit, to the defendant's own evidence, oral and documentary, and to the defendant's own pleadings in the cause wherein relief has been granted. As stated, this is an action in equity and not an action at law for damages for breach of contract. It is immaterial that plaintiff may have been the first to repudiate the contract, since the ultimate question is whether, on the admitted facts, the defendant is entitled to affirmative equitable relief.

The remedy of specific performance is not a matter of right, but rests within the sound judicial discretion of a court of equity. Rockhill Tennis Club of K.C. v. Volker, 331 Mo. 947, 949, 56 S.W. (2d) 9, 18. "But it requires a much less stronger case on the part of a defendant to resist a bill to perform a contract, than it does on the part of the plaintiff to maintain a bill to enforce a specific performance." Rosenwald v. Middlebrook, 188 Mo. 58, 89, 86 S.W. 200. Relief is granted in equity only to one who can show *his own good faith and the equities of his own position.* Frederich v. Union Elec. Lt. & Power Co., 336 Mo. 1038, 82 S.W. (2d) 79, 85(2). A party may be barred from relief by specific performance where subsequent to the inception of the contract he has been guilty of inequitable conduct. 81 C.J.S. 607, Sec. 90. Equitable relief by way of specific performance does not follow as a matter of course merely by establishing the existence and validity of the contract involved. ▮▮▮ "Equity may require that a party accept damages in lieu of specific performance, and may refuse the equitable remedy of specific performance and remit the party asking it to an action at law for damages." Rockhill Tennis Club of K.C. v. Volker, supra, 56 S.W. (2d) 9, 18. When the court simply refuses to specifically perform a contract, it leaves the party to his remedy at law. Rosenwald v. Middlebrook, supra. In view of these well established equitable principles, let us look to the admitted facts, the documentary evidence and defendant's own pleadings.

1144

The attorneys for the respective parties were duly authorized to and did enter into an agreement to compromise and settle the plaintiff's pending damage suit for $1750. No other claims and no other parties were mentioned. A stipulation between counsel was signed and filed as follows: "Cause passed for settlement." Defendant's counsel was to prepare and submit release forms and stipulation for dismissal. These forms were to be forwarded to plaintiff's counsel to be executed by plaintiff. Of course plaintiff was not to be paid until the release and stipulation were signed and delivered.

Before the release forms were prepared, defendant's attorney, Lloyd E. Boas, knew the terms of the settlement; knew that plaintiff's husband was not involved; and that plaintiff was only settling her pending damage suit. He testified: "Q. Did you ever at any time discuss the settlement of all claims which Mrs. Landau had from the beginning of time to and including the date hereof; was that ever discussed by you with Mr. Cox at any time? A. No. * * * Q. Did he ever tell you that he was settling anything beyond that claim that was in the courtroom at that time? A. No, Mr. Landau. * * * Q. Now, was there any discussion between you and Mr. Cox of settling every claim which her husband had, all claims of whatsoever kind that her husband had, against the Public Service Company from the beginning of time to and including the date hereof. A. No, there wasn't."

The opinion concedes that the release form submitted to plaintiff's counsel was to be signed by plaintiff and her husband. The opinion correctly states: "This release recited that it released not only the claim on which plaintiff sued but also all other claims plaintiff might have 'from the beginning of time to and including the date hereof' and also covered all claims her husband might have for the same period which would have included his action for loss of services etc. and for property damage to his automobile which plaintiff was driving when injured."

The release was intentionally prepared in this form. Defendant's counsel by his testimony and by statements to the trial court sought to explain his conduct by saying that he *assumed* that Mr. Landau was making no claim and that he *assumed* that all of Mrs. Landau's claims were included, nevertheless it clearly appears that the release was intentionally submitted in the above form. Counsel testified that after the settlement agreement was made he "immediately dictated a release and stipulation." He further testified: "I told the girl to prepare the usual release * * * I don't dictate them, but we have a form which has a blank space, *and if it is a married man or a married woman they put in the husband's or the wife's name.*" (Italics ours).

Defendant's counsel ratified and confirmed the terms of this release in his letter of June 12, 1952 addressed to plaintiff's husband, in which letter he stated "So that there will be no misunderstanding on your

part, the release and stipulations were not sent as a settlement offer. The case has already been settled." Defendant's counsel still stood by the terms of this release as evidencing the terms of the settlement when, on February 10, 1953, he drafted and filed defendant's amended answer and equitable defense, including the petition for equitable relief by way of an action for specific performance of the settlement agreement. In this cross-petition for affirmative relief he specifically alleged that, after the date the cause was passed for settlement, defendant "prepared releases and a stipulation ▇▇ and forwarded the same to plaintiff's counsel *for execution in accordance with the settlement agreement,* but that the plaintiff and her husband failed, neglected and refused to sign the same, and have continued to fail and refuse to sign the same to this date, and still refuse to carry out the terms of said agreement by executing the aforementioned documents and accepting the One Thousand Seven Hundred Fifty Dollars ($1,750.00) in settlement of the claim." (Italics ours). The relief prayed was "that this cause shall be dismissed with prejudice *in accordance with the settlement and compromise agreement heretofore entered into as aforesaid; that plaintiff be required to execute a release in accordance with said agreement*; that the court order plaintiff to specifically perform said contract of compromise and settlement * * *." (Italics ours). Defendant is of course bound by the action and conduct of its attorney in repudiating the very contract that the decree enforces in its favor.

Even at the trial of this case, after the evidence had definitely shown the true terms of the settlement agreement and after the court had permitted the defendant, over plaintiff's objections, to amend its petition for equitable relief to conform to the true terms of the contract by striking out the words "and her husband" from its petition and to state to the court that defendant was seeking relief strictly against plaintiff's claim as evidenced by her pending suit, defendant's witness Boas, the attorney who negotiated the settlement, testified with reference to the release form in question, as follows: "A. That is a standard release form as used throughout the business world and every case that is settled contains that kind of a release. Q. Was that the settlement that was made in this case? A. Yes, I think so. Q. Was that the settlement that you agreed upon? A. Yes." However, the record clearly shows that no such agreement was ever made and the opinion so concedes, and no such agreement is ordered to be specifically enforced by the trial court's decree as ordered modified by the above opinion.

After the hearing below, the trial court judge directed defendant's counsel to prepare the decree and the decree as entered below ordered plaintiff "to execute and deliver to defendant a release", not only of the claim sued on, but also "* * * in full settlement of all claims due the said plaintiff", all in accordance with defendant's theory as to the terms of the contract of settlement.

Regardless of the fact that the defendant by and through its counsel has always taken the position that the release form submitted was in accordance with the settlement agreement, the opinion finds that such was not the true agreement, but nevertheless grants specific performance of the true agreement, and thereby enforces a contract that defendant has always repudiated. Where one party has repudiated a contract "as actually made", the other party is entitled to have it rescinded. Schwear v. Haupt, 49 Mo. 225, 226. Clearly, the record shows that no agreement having the terms contended for by defendant was ever entered into, yet the opinion affirms a decree for the specific performance of the contract that was in fact made. Defendant's conduct should bar it from obtaining affirmative relief by way of specific performance of a contract *differing in terms* from the one that defendant has continuously insisted was the true contract. The record shows that the defendant has continuously repudiated the very contract upon which relief is granted.

A party seeking specific performance of a contract has the burden to prove a right to such relief by clear, definite and certain evidence. There is no evidence in this record that defendant was ever ready and willing to pay to plaintiff the agreed consideration, except upon the execution and delivery of the release submitted, which release did not conform to the contract as made. No burden rested upon the plaintiff to disprove defendant's right to specific performance of the contract, that burden rested upon defendant.

We think the clean hands doctrine of equity, which bars relief to one guilty of improper or inequitable conduct in the very matter as to which he seeks relief, is sufficient to bar affirmative relief under the facts in this case. Equity will not aid one who comes into court with unclean hands. Stierlin v. Teschemacher, 333 Mo. 1208, 64 S.W. (2d) 647, 652; 30 C.J.S. 475, Sec. 93. On this issue it is defendant's conduct and not the conduct of plaintiff that is for consideration. To say that plaintiff made no request for a change in the form of the release puts the shoe on the wrong foot, but plaintiff did construe, as a cross-offer of settlement, the submission of the release form which included the new matters and party.

The defense of clean hands need not be pleaded, since the doctrine will be applied by the court sua sponte. He who comes into equity must come with clean hands, and this maxim does not depend upon the averments of pleadings, or the wish of counsel, but is invoked and applied, ex mero motu, by courts of equity. Creamer v. Bivert, 214 Mo. 473, 485, 113 S.W. 1118; 30 C.J.S. 487, Sec. 97. Defendant's continuous insistence upon a contract that was never made should bar affirmative equitable relief by way of specific performance of the contract that was in fact made.

Further, we do not agree with the position taken in the opinion that specific enforcement of the contract, as the court now finds its

terms to be, was a matter within the sound discretion of the trial chancellor to be determined from his view of the entire situation. Nor do we agree that the decree may be affirmed on the theory that "the chancellor did not abuse his discretion in requiring it to be performed." We assume that "it" refers to the true contract, as the opinion now finds it to have been made, and not to the contract contended for by defendant, or as the trial court found its terms to be.

The essential facts are not in dispute, particularly the facts that ought to bar affirmative equitable relief. The cause is for review de novo on this appeal. Established equitable principles are to be applied to undisputed facts. The discretion to be exercised is the discretion of this court. While the trial court had a discretion to grant or refuse equitable relief in the first instance, that duty now rests upon this court. Since the facts are not in dispute, this court on this appeal must exercise its own discretion. It is not a question of whether the chancellor could reasonably find from all of the evidence that there was "no more than a minor breach", or that there was no repudiation of the contract "as made." That question is for this court on the record presented. This court on this appeal must decide the same issues as were decided by the trial court, and in so doing there is no deference to a trial court's conclusions in connection with factual issues. The appeal involves the application of equitable principles to the undisputed facts of a case. There is no discretion as to the applicable law. The application of equitable principles to the admitted facts bars affirmative equitable relief to defendant. The judgment should be reversed and the parties left in the position in which their own conduct has placed them.