Ephraim C. EWING and Josephine Ewing, Appellants,

v.

Dr. L. Virgil MILLER, Respondent.

No. 47450.

Supreme Court of Missouri,

Division No. 2.

April 11, 1960.

Motion for Judgment or Rehearing Denied May 9, 1960.

Walter J. Gresham, Kansas City, for appellants.

Al Mendelson, O. Hampton Stevens, Kansas City, for respondent.

EAGER, Judge.

This is a suit for damages, actual and punitive, for the alleged breach and repudiation of a contract to reconvey real estate. The trial court directed a verdict for the defendant at the close of plaintiffs' evidence. After the overruling of an after-trial motion, plaintiffs have appealed. We shall refer to the parties as they appeared below. When the word "plaintiff" is used we refer to the plaintiff husband.

Plaintiffs bought an apartment building at 2903-2905 East 27th Street in Kansas City, Missouri, in 1953. They paid $3,000 down. The property was encumbered with first and second deeds of trust in the original principal amounts of $11,000 and $7,000, respectively. There was evidence that in September 1956, the balance due on both was approximately $14,250. There were six apartments in the building; plaintiffs occupied two of these, but rented out some space therein. In February 1956, payments were delinquent on both deeds of trust and foreclosure had been started. Defendant, an acquaintance of plaintiffs, saw the foreclosure notice and offered to help; after some discussions he took a note for $1,000 at 8% interest payable in one year, and paid up the delinquencies of $966.-24. What happened to the remainder of the $1,000 is not shown. At this time plaintiffs signed an agreement reciting the making of the loan, and requiring the payment of $500 on August 7, 1956, and $500 on February 16, 1957; the agreement further recited that plaintiffs agreed to execute a warranty deed or such other papers as defendant might require upon default in the payments required therein or upon further defaults in payments to become due on the "mortgage." Apparently plaintiffs continued for a time to collect the rents and to make some payments on the encumbrances. The evidence is, in certain respects, very vague. In September 1956, they were delinquent again and another foreclosure was started. At that time defendant bought the note secured by the second deed of trust. A second agreement was executed between plaintiffs and defendant by which, in consideration of the prior loan, plaintiffs agreed to give defendant a warranty deed to the property and he assumed and paid all delinquencies on the "second mortgage," provided, however, that if plaintiffs paid to defendant within one year from September 18, 1956, one thousand dollars with 8% interest and all other mortgage payments, expenses, and costs expended on the property at 6% interest, then defendant "agrees to deed back to Ephraim Ewing and Josephine Ewing said property." A warranty deed was executed and delivered; it is not in evidence, but apparently it was in the usual unconditional form. Plaintiffs testified that defendant stated that he did not think he would ever "file" the deed. As of October 1, 1956, the defendant started collecting the rents; plaintiffs began paying to him $100 per month which was generally referred to in the record as "rent." In fact, plaintiff

Ephraim admitted (as we read the record) that these payments were for rent. Certainly the record does not show that these payments were to apply on the $1,000 borrowed. Plaintiffs made no payments on either deed of trust in or after September 1956. Plaintiff testified that he made mortgage payments between February and September 1956, and we must take his testimony as true. He said that he stopped after the agreement of September 1956, because defendant then began collecting the rents. Defendant paid some back taxes in 1956, but the details are not shown. At some time prior to March 1957, defendant instituted a rent suit against plaintiffs; presumably the amount sought was paid, for the suit was disposed of. About March 5, 1957, defendant purchased the note secured by the first deed of trust. On March 13, 1957, he instituted suit against plaintiffs in a Magistrate's Court for $250 as rent. On March 29, 1957, plaintiff paid $245 to defendant's attorney and he testified that he was then told that everything was all right. As a matter of fact, defendant's attorney had taken judgment that morning. The judgment was not satisfied and executions were issued later; plaintiffs were evicted on this judgment at some time during the spring or summer. Plaintiff testified further: that on several occasions in April and May 1957, he "attempted to get the balance" that he owed defendant; that he talked to defendant Miller and also to defendant's counsel, Mr. Mendelson; that defendant said "he didn't know, he would have to get the receipt, and so forth"; that Mendelson told him to see the defendant; that he was not able to determine what amount would be necessary "to redeem" the property. Plaintiff also testified: that he had been negotiating with two different persons for a sale of the property at around $20,000 to $21,000; these negotiations were still in the "conversation" stage, but that one person had "agreed" orally to pay "around $21,000 * * *"; that it was necessary for him to get the balance of the outstanding indebtedness confirmed.

On September 18, 1957, precisely one year after the date of the second agreement, plaintiffs filed this suit seeking $10,000 actual and $10,000 punitive damages for defendant's supposed repudiation of the contract to reconvey. Therein they alleged fraud and malice in procuring the deed and retaining title, and a repudiation and breach by defendant in asserting title in himself, in evicting plaintiffs, and also in wrongfully asserting to plaintiffs that the balance due him was $22,000. (This latter was not shown in the evidence.) The answer, so far as material, consisted of denials, allegations of failure to repay and failure to reimburse defendant for expenses, and consequent default.

It was also shown in the evidence that in August 1953 plaintiffs had filed for record a declaration purportedly dividing the fee in this property into six equal interests and establishing a co-operative venture; also, that they had sold two such fractional interests, but that the purchasers had defaulted about the time of the February 1956 foreclosure. Defendant knew of these occurrences; they are discussed in the briefs, pro and con, but we do not consider them material here. We are not asked to adjudicate the state of the title, nor do we intend to do so. This is a suit for damages.

Plaintiffs' primary contention is that this warranty deed was in fact a mortgage and that defendant agreed to reconvey, but that, instead, he repudiated the agreement, refused to accept repayment, evicted plaintiffs, and asserted that they had forfeited their rights. Plaintiffs argue, in effect, that there was an anticipatory breach. In large part plaintiffs rely upon the rent eviction as establishing the breach and repudiation. However, they also insist (by way of generally aiding in establishing a breach) that a confidential relationship existed, because defendant pretended to be their friend, offered to help them out of their difficulties, and they placed their trust in him. They cite: Selle v. Wrigley, 233 Mo.App. 43, 116 S.W.2d 217, 221; Klika v.

Albert Wenzlick Real Estate Co., Mo.App., 150 S.W.2d 18; Swon v. Huddleston, Mo., 282 S.W.2d 18, 55 A.L.R.2d 205. We need spend no time on this latter contention for all the facts indicate that these parties were dealing at arm's length. At the very beginning defendant took a note at 8% interest and exacted the promise of a deed upon any further defaults; he later paid further delinquencies but required a promise of 6% interest on all expenses advanced, and he required delivery of the deed, as stipulated. The "trust and confidence" cases are not applicable merely because, under these circumstances, a casual acquaintance advanced money and said he wanted to help. It is unnecessary to discuss the facts of the cases cited. The advancement here was purely a business proposition.

■ This case is considerably confused and confusing because of the arguments, pro and con, about the rent suits and the eviction. Plaintiffs argue that fraud was demonstrated in evicting them after they had paid substantially the amount sued for (less costs) and had been assured that everything was all right. They also argue, on certain more or less technical grounds, that the Magistrate's judgment and the eviction were wholly void. Defendant counters by insisting that plaintiffs cannot attack that judgment collaterally. We have determined that the whole matter of the rent suit, judgment, and eviction are purely collateral to the issue involved here and that it is therefore immaterial. After plaintiffs gave their warranty deed in September 1956, defendant began collecting the rents, and plaintiff Ephraim admitted that the sum of $100 per month which he paid thereafter was rent. If he made no express agreement therefor he nevertheless acquiesced, and thus recognized some form of title and right of possession in defendant, as distinguished from a mere security or equitable interest. The filing of suit for rent, procuring judgment, and evicting plaintiffs thereon did not constitute a repudiation of the written agreement to reconvey upon performance of the contract by plaintiffs. There is no doubt that plaintiffs, after the eviction, still had the right to insist upon the terms of their agreement; the eviction could not possibly divest them of that right. In these remarks we do not mean to approve of the actions taken in the rent suit, namely, accepting on the day of judgment substantially the amount sued for, letting the time for appeal go by, then informing plaintiffs of the judgment, and later evicting them. We must accept the truth of these facts here as testified to by plaintiff, for we are passing upon the sufficiency of plaintiffs' evidence. These assertions also seem to be largely confirmed by Mr. Mendelson's letter of April 8, 1957. Such matters, however, are purely collateral to our issues here, for our present suit is one for damages for breach of the contract, not for a wrongful eviction. As already stated, we hold that the rent eviction was not, in itself, a repudiation of the contract. The contract, the rent payments, and the deed constituted some recognition that defendant was, at least for the time being, the holder of the legal title. His acts in prosecuting a rent suit did not impair his rights or duties under the contract; for its correlative obligations were left intact.

■ Plaintiffs insist that the warranty deed here operated solely as a mortgage which could only be foreclosed by suit, citing Sheppard v. Wagner, 240 Mo. 409, 144 S.W. 394, 145 S.W. 420. There might be some doubt as to whether this conveyance did in fact constitute a mortgage or a conditional sale. See Sheppard, supra, 144 S.W. loc. cit. 403; Powell v. Huffman, 358 Mo. 138, 213 S.W.2d 473, 474–475; Blick v. Nickel Savings, Inv. & Bldg. Ass'n, Mo., 216 S.W.2d 509; Pahler v. Young, Mo., 232 S.W.2d 393. The promissory note indicated the continuation of an indebtedness and it was not cancelled upon delivery of the deed; but the collection of rents and the transfer of at least technical possession to defendant tended to indicate a transfer of title, rather than the grant of a mere security interest. It will not be necessary to decide this question. Plaintiffs are somewhat in-

**158** ■ ▬▬▬▬▬▬▬▬▬▬

consistent in saying that the deed remains a mortgage until foreclosed in court, and, almost in the same breath, in electing to seek damages rather than redemption or specific performance. If we consider the deed as a mortgage, along with the agreement to reconvey upon performance by plaintiffs of stated conditions, it is clear that a breach in the nature of a repudiation by defendant must be proven to support this suit for damages. We shall consider only the agreement of September 1956, for in so far as it is inconsistent with the former agreement of February 1956, it supplanted the latter. Ragan v. Schreffler, Mo., 306 S.W.2d 494. We have ruled out the rent suit and eviction as a repudiation of this contract. Plaintiffs cite: Landau v. St. Louis Public Service Co., Banc, 364 Mo. 1134, 273 S.W.2d 255, 48 A.L.R.2d 1200; Wayland v. Western Life Indemnity Co., 166 Mo.App. 221, 148 S.W. 626; Diehr v. Thompson Chemicals Corp., Mo.App., 281 S.W.2d 572. These cases establish, generally, the principle that where one party to a contract repudiates it and manifests an intention not to perform, the duty of the other party is terminated. We fail to find here any substantial evidence to show a repudiation by the defendant, or showing that he manifested an intention not to perform the contract. Eliminating the rent eviction as we have already done, the only remaining evidence is that upon inquiries of plaintiff as to the amount due, defendant procrastinated and said that he didn't know and that he would have to get the receipt(s). We hold that this did not constitute substantial evidence of a repudiation nor of the manifestation of an intention not to perform. Missouri has recognized the doctrine of anticipatory breach by repudiation. Hawkinson v. Johnston, 8 Cir., 122 F.2d 724, 137 A.L.R. 420; Eddington v. Cockrell, Mo.App., 286 S.W. 405, 406. But such a repudiation is shown only by the disclosure of a positive intention not to perform the contract, by express statements or otherwise. Williston on Contracts, Rev. Ed., Vol. 5, § 1325. For instances of such repudiations, see: Hawkinson v. Johnston,

8 Cir., 122 F.2d 724, 137 A.L.R. 420; Burch v. Union Life Ins. Co., Mo.App., 319 S.W.2d 908; Farrow v. Farrow, Mo., 277 S.W.2d 532. Of the cases cited by plaintiff we note the following: In Landau v. St. Louis Public Service Co., 364 Mo. 1134, 273 S.W.2d 255, 258, 48 A.L.R.2d 1200, plaintiff had notified defendant that the settlement previously agreed upon "wouldn't go through" because the amount proposed was insufficient. In Diehr v. Thompson Chemicals Corp., Mo.App., 281 S.W.2d 572, the defendant had refused to perform as previously agreed (although adequate tender was made) unless plaintiff consented to new and additional conditions. In Wayland v. Western Life Indemnity Co., 166 Mo.App. 221, 148 S.W. 626, defendant had declared the forfeiture of a life insurance policy for failure to pay two illegal assessments. None of these cases, and none which we have found, justify the finding of a repudiation upon such evidence as we have here.

■ We also hold that there was no repudiation or breach by refusal to accept a tender, for there never was any effective tender here. Plaintiff had merely conducted some oral negotiations for a sale, and thought he might make a sale; he showed no ability at any time to make repayment, and he did not even offer repayment of the $1,000 originally advanced, with or without interest. This much he knew he must pay. Tender comprehends not only the readiness and willingness to pay, but the ability to do so. 86 C.J.S. Tender § 29, pp. 571–572, and cases cited. Actually, plaintiff did little more here than to express a hope and possibility of future repayment. Compare Edwards v. Sittner, Mo.App., 213 S.W.2d 652. An outright repudiation might have obviated the necessity for a tender. There was no repudiation and a tender was necessary; none was made. Plaintiffs have failed to produce substantial evidence on these, the most essential features of their case. The court was correct in directing a verdict.

Other points made in plaintiffs' briefs are ruled by what we have already decided. The exhibits offered as newly discovered evidence on the motion for new trial could not have affected the result in the light of our ruling, even had they truly been newly discovered. And from what we have said, it is obvious that plaintiffs were not, at any time, entitled to a directed verdict on the question of liability, as they still insist they were. It has not been necessary to consider this case in the posture which it might have assumed had plaintiffs sought specific performance or other equitable relief. They abandoned that theory and elected to sue for damages only.

The judgment is affirmed.

LEEDY, P. J., STORCKMAN, J., and JAMES W. BROADDUS, Special Judge, concur.