**In re ESTATE of J. A. REED, Deceased.**

**Addie Mae COPELAND, Appellant,**

v.

**Bertha May REED, Respondent.**

**No. 51881.**

Supreme Court of Missouri,
Division No. 1.

April 10, 1967.

Robert B. Baker, Ellington, for administratrix-appellant.

William H. Bruce, Jr., Centerville, for claimant-respondent.

HOUSER, Commissioner.

This appeal involves the rights of the widow Bertha Reed in the estate of her deceased husband, J. A. Reed. The estate consisted of real estate and personal property. His administratrix has appealed from a judgment of the circuit court sustaining her various claims.

J. A. Reed and Bertha May Womack were married on September 12, 1961. The day before their marriage they executed a written document called an "Antenuptial Contract," which was prepared by a lawyer to whom Mr. Reed went to have him "fix up some papers." The contract recited that the parties contemplated marriage; that each was possessed of real and personal property in his own right; that each had adult married children by former marriages; that they desired that their marriage not change their property rights or the rights of their children and heirs "from what they [were] before the marriage." It was agreed that Mr. Reed would provide his wife with a home during the continuance of the marriage; that the survivor of them would make no claim to any part of the estate of

the other as surviving spouse; that the parties waived and relinquished their rights to elect to take against any will, exempt property, homestead allowance, one year's support and "their rights to all other claims of every kind and character against the estate of the other." In lieu of these rights it was agreed that the survivor be paid $50 per month for life out of the estate of the other. The intention was expressed that the estate of each descend to or vest in his or her heirs at law, legatees, or devisees, according to will or the law of the state in force "as though no marriage had taken place between them," and the contract gave each the right to will or deed his or her property as each saw fit.

About two months after the marriage Mr. Reed and his wife "got the papers out." Upon reading the contract "it was unsatisfactory." According to Mr. Reed's statements to relatives and a neighbor, the paper was supposed to have been a will, but he read it and "it turned up to be a contract." He said that it did not give his wife "enough"; that it allowed her nothing but $50 a month, and that this "is not anything." In the presence of his wife, daughter and son-in-law he said "I am going to destroy this." Then he said to his wife, "Hold the stove door open." Mrs. Reed opened the door of the stove and Mr. Reed threw the contract into the stove. It was burned up. The next day after he burned his copy of the contract Mr. Reed went to his lawyer's office, told his lawyer that he "wanted all the papers he had on them. He said he wanted them all." The lawyer said that he could not find the papers; that he would find them later and "bring them up." Shortly thereafter the lawyer came to Mr. Reed's house. Mr. Reed told him that he burned his copy of "that thing and [that he] didn't want it in court" and that he wanted the lawyer's copy so that he could destroy it. The lawyer told him that he did not have them; that he had misplaced them and could not find them. The lawyer never did produce the office copy of the contract during Mr. Reed's lifetime. There is no evidence that Mrs. Reed had an additional copy of the contract.

On February 21, 1962 Mr. Reed went to another lawyer and had a will prepared and signed, by the terms of which, among other things, he left one third of his estate to his wife. He died on February 14, 1964. Mrs. Reed paid the funeral bill of $1,122.45 out of her own funds. The executor named in Mr. Reed's will refused to qualify. Mrs. Reed waived her right as surviving spouse to administer on the estate, and she renounced the will. A daughter of the deceased was appointed administratrix of the estate. The inventory showed real estate appraised at $13,200, and personal property appraised at $353.65.

Mrs. Reed filed claims against the estate for the funeral bill, and for allowances of a year's maintenance, homestead and exempt property. The lawyer produced a copy of the antenuptial contract and administratrix filed a motion in the probate court to deny statutory allowances to the widow on the basis of the contract. The probate court found that the contract was in force and effect, sustained the motion to deny the statutory allowances, and directed administratrix to pay the widow $50 a month under the contract. The probate court also allowed the claim of the widow for the funeral bill.

The administratrix appealed to the circuit court from the order allowing the funeral bill, and the widow appealed to the circuit court from the orders denying her statutory allowances.

The circuit court conducted a hearing, found that the consideration for the antenuptial contract was not fair and that after the marriage it was rescinded; that decedent left lineal descendants; that the widow timely filed her election to take against the will, and that the widow was entitled to statutory allowances as follows: exempt property, $281.33; one year's support, $1,-800; homestead amounting to 50% of the estate exclusive of the allowances for exempt

property and one year's support, which amount should be offset against the distributive share of the widow under § 474.-290, RSMo 1959, V.A.M.S.; that the widow was entitled to reimbursement for the funeral bill in the sum of $1,130, and that she was entitled to one third of the estate, subject to the payment of claims, and that she take nothing by the will.

On this appeal administratrix makes four points. We sustain the first point, that the court erred in finding that the consideration for the antenuptial contract was "unfair." There is no evidence upon which to base this finding.

The second and third points are that the court erred in finding that the contract was rescinded, because the evidence is insufficient to support such a finding in that (1) no mutuality of consent to rescind is shown; that the evidence shows no intention on the part of both parties to rescind or acts of either inconsistent with the continued existence of the contract, and (2) the contract had been partly performed and there was no new consideration to support an oral executory agreement to rescind.

A written contract may be rescinded or abandoned by parol. An express agreement to rescind need not be shown. An agreement to rescind may be inferred from the acts and declarations of the parties. Chouteau v. Jupiter Iron-Works, 94 Mo. 388, 7 S.W. 467; Henges Co. v. May, Mo.App., 223 S.W.2d 110, 112, and authorities cited. "It has been held that where one party claims to rescind a contract, the rescission is by mutual consent where the other party agrees to the rescission or does not object thereto and permits it to be rescinded. 'So, a contract will be treated as abandoned where the acts of one party inconsistent with its existence are acquiesced in by the other.' Alropa Corp. v. Smith, 240 Mo.App. 376, 199 S.W.2d 866, loc. cit. 871." Deu Friend v. McDermott, Mo.App., 251 S.W. 2d 339, 341, 342; 17A C.J.S. Contracts § 389, p. 467, fn. 62. Strictly speaking this is a case of mutual abandonment or cancellation by agreement, not rescission in the technical sense, but the end result is the same: discharge of the reciprocal contractual duties arising under a formal contract.

Mutual abandonment and cancellation "must be clearly expressed, and acts and conduct of the parties to be sufficient must be positive, unequivocal, and inconsistent with the existence of the contract." 17A C.J.S. Contracts § 389, p. 467, fns. 63, 64. That contractual duties arising out of formal contracts are discharged by the destruction or cancellation of the document is attested by Restatement of the Law of Contracts § 432, where, in the comment on page 814, it is said: "A formal contract is to such an extent regarded as bound up in the document containing the contract that it will not survive the document's destruction * * * if that is accompanied by a manifestation of intention of the person entitled to performance of the duties arising from the contract to discharge them."

Mutual consent to destroy the written contract by burning, and unequivocal acts of both parties demonstrating the intention to obliterate and destroy it, and cooperating to bring about its destruction, are clearly shown by the evidence in this case. It is difficult to conceive of a more positive and unequivocal act inconsistent with the continued existence of a written contract than that of casting it into a stove to be consumed by fire. Mrs. Reed, with full knowledge of the intention of Mr. Reed to destroy the contract, did not object but permitted, and in fact actively participated and cooperated in, the act of destruction. This effectively did away with, obliterated and blotted out the antenuptial contract and all of the consequences mentioned in the writing. The court did not err in finding that the contract was "rescinded." After the burning it was as if the contract had never existed.

J. A. Reed having died testate, Bertha Reed as the surviving spouse had a right of election to take against the will. Having elected to take against the will she was entitled, by § 474.160, RSMo 1959, V.A.M.S., to exempt property, one year's support, one third of the estate, subject to the payment of claims (J. A. Reed having left lineal descendants), and homestead, all as allowed by the circuit court, unless, as contended by appellant, the agreement to rescind was nudum pactum. Appellant contends that it is executory, without consideration, and therefore unenforceable.

 If the antenuptial contract had been wholly executory the mutual agreement of the parties would have been sufficient to set it aside, without consideration. Thumm v. Lohr, Mo.App., 306 S.W.2d 604, and authorities cited l. c. 609. Although the original contract was not executory, the parties having married and the husband having provided a home for the wife for a period of months, the contract was still bilateral, each party having certain undischarged duties and certain unperformed advantages thereunder. In such circumstances the mutual agreement of the parties is sufficient to operate as an abandonment and cancellation of the contract. Corbin on Contracts, Vol. 5A, § 1236, p. 540: "If the existing agreement that is the subject of rescission is still a bilateral contract, each of the parties has one or more rights under the contract to be given up, as well as one or more duties under it from which to be discharged. In such a case a mutual assent to a rescission is at once operative to discharge both parties."

Appellant's fourth point is that the court erred in allowing Mrs. Reed reimbursement of the funeral bill, for the reason that "the antenuptial contract showed that she had waived any claim to the estate of the deceased." This point, which depends upon the continued existence of the antenuptial contract as an agreement in full force and effect, falls with the contract.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HOLMAN, P. J., HENLEY and SEILER, JJ., and KIMBERLIN, Special Judge, concur.