**J.L. MASON OF MISSOURI, INC.,
Appellant–Plaintiff,**

v.

**Donald YERKE, et ux.,
Respondent–Defendant.**

**No. 53335**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 5, 1988.

John L. Davidson, Kell, Kell, Custer, Weller & Davidson, St. Louis, for appellant-plaintiff.

L. Joseph Garavaglia, Vatterott, Shaffar & Dolan and Paul J. Harris, St. Ann, for respondent-defendant.

KAROHL, Presiding Judge.

J.L. Mason of Missouri, Inc., (Mason), seller of a single family residence, appeals verdict and judgment for Donald J. Yerke and Kathleen A. Findley (now Yerke), purchasers, on its petition for damages for breach of a real estate sale contract. Purchasers did not appeal an adverse verdict and judgment on their counterclaim for return of $1,000 earnest money.

On September 26, 1983, the parties contracted for the construction of a house on lot 88 in the Clarkson Crossing Subdivision. On March 23, 1984, after completing construction of the home, seller notified purchasers it was ready to close. By that date the purchasers had not yet sold the home they owned when the sale contract was signed. For that reason, at least in part, purchasers chose not to close. Seller resold the residence on July 10, 1984. Seller received $1,171.40 less than it would have received from purchasers. Seller petitioned for:

(a) ... the sum of ... $11,363.40, such sum being the difference between the purchase price and the fair market value of the property on February 21, 1984, together with the sum of ... $10,-000, such sum being the contract amount of liquidated damages at ... $100 a day from February 21, 1984, until the real property was sold, July 10, 1984, for a total of ... $21,463.40, together with interest on such sums at nine (9%) per annum from July 10, 1984, or

(b) In the alternative, the sum of ... $11,363.40, such sum being the difference between the purchase price and the fair market value of the property on February 21, 1984, together with the sum of ... $3,944.81, such sum being interest on the purchase price from February 21, 1984, until the property was sold on July 10, 1985, for a total of ... $15,308.21, together with interest on such sums from July 10, 1984, at nine percent (9%) per annum, or

(c) In the alternative, the sum of ... $11,363.40, such sum being the difference between the purchase price and the fair market value of the property on February 21, 1984, together with the sum of ... $12,575, such sum being the interest cost, carrying charges, overhead, and insurance expended by Plaintiff between February 21, 1984, and the time Plaintiff was able to sell such property, July 10, 1984, for a total of ... $23,-938.40, together with interest on such sums from July 10, 1984, at nine percent (9%) per annum.

Purchasers' trial position focused on their claim that they did not receive a loan commitment within sixty days after the contract was signed, and thereby failed to satisfy a financing contingency in the sale contract. This was also the premise of their counterclaim for a refund of the earnest money. They did not assert this position when they were told the house was completed and ready for closing or before suit was filed. In legal terms, purchasers claimed that as a matter of law the failure of a condition subsequently voided the contract. In closing argument purchasers made the same argument as a matter of fact.

Seller claims error in failure of the trial court to direct a verdict on the issue of liability for breach of contract because purchasers conceded their anticipatory repudiation of the sale contract on March 23, 1984, when they refused to close under the contract. The only justification purchasers offered at that time was an inability to close because they had not sold their house and could not afford the payments on two houses. In separate, but related, claims seller also contends it was entitled to a directed verdict on the issue of liability because: (a) purchasers failed to pay additional earnest money within fifteen days after the contract was signed; and, (b) purchasers failed to use reasonable efforts to obtain financing within sixty days. Other claims of error involve rulings on the pleadings and jury instructions where the subject matter was purchasers' affirmative defense, damages, and prejudgment interest.

Seller prepared, and the parties signed, a customized preprinted contract form utilized by seller. The form consisted of three printed pages. The first page contained provisions on the front and back, the remaining pages only on the front. The contract was signed by an agent for the seller and by the purchasers on the face of pages one, two and three. Pages two and three were described as "addendum to contract." Page two addendums were for extras, at an additional cost of $8,205. Page three noted a discount of $18,397. Supplemental addendums were agreed to on October 19, and October 24, 1983, which did not affect the cost. A "Contract Change Order" relating to a contingency for seller on the sale of their home was attached, but it was not filled in. It was undated and unsigned. However, there was an "N/A" notation on the form.

The relevant provisions of the contract are as follows:

[page one]
Contract for purchase and sale of a lot and house to be constructed, made and executed this 26th day of Sept., 1983, by and between Donald J. Yerke and Kathleen A. Findley hereinafter called "Purchaser", and J.L. Mason Group, Inc., hereinafter called Seller.

\* \* \*

For and in consideration of the mutual promises, covenants, and undertakings hereinafter set forth, the parties hereto agree as follows:
(1) Purchaser, ... has paid to the Seller the sum of One thousand and 00/100 ($1,000) dollars, receipt of which is hereby acknowledged, ...
(2) Seller agrees to construct for Purchaser a house on lot 88 of Clarkson Crossing SUBDIVISION...

\* \* \*

TOTAL SALES PRICE _____                          DOLLARS  $158,400.00
Seller agrees to sell said house and lot to purchaser when said house is constructed, and Purchaser hereby agrees to purchase said house when constructed and the

aforementioned lot on which it shall be situated, for the total sales price above, on the following terms.

| | |
|---|---|
| CONSTRUCTION DEPOSIT MADE PER THIS RECEIPT | $ 1,000.00 |
| ADDITIONAL DEPOSIT DUE 15 DAYS FROM DATE OF THIS CONTRACT | $ 13,000.00 |

\* \* \*

| | |
|---|---|
| UPON CLOSING OF SALE AS HEREINAFTER ESTABLISHED | $144,400.00 |

\* \* \*

| | |
|---|---|
| TOTAL SALES PRICE | $158,400.00 |

[on reverse of page one]

(3) This contract is contingent upon Purchaser obtaining a written mortgage *commitment in the amount of $125,000.00 not later than 60 Days From Date Of This Contract.* All loan service charges and related fees to be paid by Purchaser. Purchaser acknowledges and agrees that this contingency shall be *deemed automatically waived and satisfied upon issuance of said loan commitment* and/or Purchaser's payment of a loan commitment fee or loan origination fee to the prospective lender. Any and all conditions, terms and/or contingencies to actual disbursement of the loan committed to shall be the sole responsibility of Purchaser, and of no force or effect with regards to waiver or satisfaction of this contingency. If Purchaser has been unable to obtain said loan commitment by the above date, *Seller shall have the right either* to (1) attempt to secure such financing for Purchaser within thirty (30) days *after receipt of notification, from purchaser of disapproval of purchaser's application for financing,* or (2) cancel and rescind this Contract. In the event Seller is unable to obtain such financing, or in the event Seller so cancels and rescinds this Contract, Purchaser's construction deposit shall be refunded, provided that (1) Purchaser has timely complied with the requirements of (a.) apply for loan within five (5) days of the date of this contract *and* (b.) *notify Seller of disapproval of application for financing,* and (2) Purchaser has cooperated in all necessary respects with Seller's efforts to secure said financing for Purchaser where applicable.

\* \* \*

(8) Residence shall conclusively be deemed completed at such time as it is ready for occupancy and if at such time certain details remain unfinished that are not sufficient in Seller's judgment to prevent comfortable occupancy, (including, but not limited to, grading, sodding, seeding, exterior painting, and exterior work not completed because of weather conditions) then sale shall be closed. A written list of uncompleted details shall be prepared on Seller's form and signed by Purchaser and Seller, which Seller shall at its cost complete as quickly as possible.

It is understood and agreed by both Purchaser and any lender who may commit financing pursuant to this contract that no money shall be escrowed at closing by Seller for uncompleted items.

(9) Seller estimates that construction of the residence shall be completed on or about January 31, 1984 provided, however, that Seller shall not be chargeable for delay caused by weather, strikes, accidents, acts of God, unavailability of material or labor, or other causes beyond Seller's control.

(10) The sale under this contract shall be closed, however, within five (5) days after completion of the residence at the office of Seller in St. Louis County, Missouri or at such place and time in the St. Louis area as Seller may hereafter direct. The title to property is to pass and possession to be delivered upon closing of sale. Time is of the essence of this Contract. The completion of the purchase and the transfer of the title to the Purchaser shall constitute acceptance of the house as finally built, including all specifications and materials as installed. Purchaser shall have no right to possession of the property herein agreed to be sold until closing of said sale.

\* \* \*

[page 2, Addendum To Contract, dated September 26, 1983]
[eleven changes are noted, including rear entry to garage, walkout basement, rough-in for fireplace in basement. Indicated additional cost–$8,205.00"]

\* \* \*

[page 3, Addendum To Contract, dated September 26, 1983]
"Homer Award Discount" ($18,397)

\* \* \*

[page 4]

[Contract Change Order, contingent upon sale of Purchasers' present home, was not filled in, dated or signed, as previously described]

---

We have added emphasis to the operative provisions in the sale contract which are relevant to this appeal. In summary, purchasers agreed to pay $148,208, [$158,400 + $8,205 − $18,397], for the house to be built by seller. They deposited $1,000 and agreed to pay an additional $13,000 by October 11, 1983. They were to obtain a commitment for a loan in the amount of $125,000 by November 25, 1983. If such financing was disapproved they agreed *to notify seller of disapproval* in order to allow seller, at its option, to cancel and rescind, or to obtain financing on behalf of purchasers within 30 days. Seller was to build and complete the house on or about January 31, 1984. Closing was to occur five days after completion. The delay in completion of the house was never an issue.

The facts which are either undisputed or were developed from the testimony of purchasers and which are relevant to this appeal are:

(1) Purchasers made one application for a loan. It was never disapproved. Purchasers applied for a loan of $133,200 to purchase the subject house for $166,605. The loan was approved on January 18, 1984 by St. Louis Federal Savings and Loan Association.

(2) Purchasers never paid the additional deposit of $13,000.

(3) Neither the sale contract nor the loan commitment was contingent upon purchasers sale of the home they owned when the sale contract was signed. Purchasers let the loan commitment expire.

(4) Purchasers requested release from the sale contract. The request was denied by letter from seller dated February 21, 1984.

(5) The City of Ballwin finally approved the house on March 23, 1984. The approval noted some "punch list" requirements.

(6) On March 23, 1984 purchasers were notified the house was substantially complete. Closing was due five working days thereafter, on March 31, 1984.

(7) Purchasers met with an attorney representing seller on March 23, 1984. The meeting was requested by Donald Yerke because the time for closing was approaching and purchasers could not close and pay the purchase price. They were told by the attorney that seller was ready to close. Purchasers told the attorney they were not ready. The attorney informed purchasers that seller would expect to be paid damages for delay in closing as provided in the contract and would attempt to resell. Purchasers made no objection.

(8) After March 23, 1984, purchasers applied for a loan from their employer, Citicorp, because the rates were better than those charged by the Savings and Loan. They received a loan commitment for $140,000 on May 16, 1984.

(9) Seller contracted to resell the house under a contract dated May 12, 1984. Seller closed under this contract on July 10, 1984. It received a net payment of $147,036.60, which was $1,171.40 less than the sum due from purchasers.

We find the trial court erred as matter of law in denying seller's motion for directed verdict on the issue of liability at the close of all the evidence. We so find because, as a matter of law, on purchaser's facts they breached their promise to close at a time when the contract remained enforceable by either party, on March 23, 1984. The issue is before us as a matter of preserved error. It was presented in seller's motion for directed verdict at the close of all the evidence, preserved in the motion for new trial and briefed here as follows:

THE TRIAL COURT ERRED IN NOT DIRECTING A VERDICT IN FAVOR OF PLAINTIFF'S AND AGAINST LIABILITY ON THE ISSUE OF DEFENDANTS BREACH OF CONTRACT IN THAT IT WAS UNDISPUTED THAT DEFENDANTS MADE AN ANTICIPATORY REPUDIATION OF THE CONTRACT ON MARCH 23, 1984 BY STAT-

ING THEY COULD NOT THEN CLOSE AND PAY THE PURCHASE PRICE.

We find error on the basis of the undisputed facts, including the sale contract and only the testimony of purchasers. We are aware that ordinarily a court is not obligated to direct a verdict for a party who bears the burden of proof. However, an exception to the general rule applies where, as here, the motion depends on conceded facts, *Duke v. Missouri Pacific Railroad Company*, 303 S.W.2d 613, 616[1] (Mo. 1957), or "cases in which there remains no questions of fact to be resolved." *Ramsey v. Vance*, 622 S.W.2d 774, 777 (Mo. App. 1981). In such cases only a question of law remains.

Missouri has recognized the doctrine of anticipatory breach of contract by repudiation. Our Supreme Court has recognized and applied the doctrine in a suit for damages for breach and repudiation of a contract to convey real estate. *Ewing v. Miller*, 335 S.W.2d 154, 158 (Mo. 1960). The court there found that "plaintiff-purchaser" failed to prove breach and therefore affirmed a directed verdict for "defendant-seller." The doctrine was recognized as a frame of reference for determining insufficiency of proof of breach. The strength of recognition may be seen in the observation that, "[a]n outright repudiation might have obviated the necessity for a tender." *Id.* at 158.

■ In the present appeal the proof of repudiation appears in the testimony of purchasers who were called as witnesses for seller. Donald Yerke requested a meeting because he knew the time for closing was approaching. At the meeting on March 23, 1984, completion of the house was noticed and not debated. Closing was due under the contract within five days. Purchasers, solely on the basis of non-sale of their home, informed seller that they would not be able to close. If the contract was still viable and enforceable by either side at the time of repudiation, the legal effect of purchasers position was, on conceded facts, anticipatory breach of the sale contract.

The issue narrows to a question of whether the contract and conceded facts alone are sufficient to enable us to decide that the contract was not nullified by failure of purchasers to receive a sufficient loan commitment by November 25, 1984.

Purchasers rely on the terms of the contract and *Berger v. McBride & Son Builders, Inc.*, 447 S.W.2d 18, 19 (Mo.App.1969). In a suit by purchaser for a refund of earnest money, *Berger* affirmed a judgment for refund in a court tried case. The court looked to the contract which provided,

> This contract is contingent upon Seller being able to obtain 30 year financing for the Purchaser in at least the amount of $15,700.00 and if such financing cannot be obtained by May 20, 1966, this contract shall be deemed cancelled and all moneys received from Purchaser hereunder will be refunded, less expense charges incurred attempting to secure financing.

On this and like authority purchasers argued "void contract after 60 days" before the trial court, and here argue: (1) that purchasers "did not receive a written commitment until January 18, 1984, well beyond the time permitted by the contract"; and, (2) "[t]he trial court did not err in not directing a verdict in favor of appellant on liability based on respondents 'anticipatory repudiation' of the contract because the contract was null and void in that the terms of the conditions subsequent had not been met'." On the latter point purchasers suggest "the issue is moot, in that the evidence established, and the jury was entitled to, and did, find that the contract failed on or about December 2, 1983, due to the non-occurrence of the terms of the condition subsequent."

There are a number of fatal defects in purchasers' position. First, purchasers did not conduct themselves, before or after March 23, 1984, as if the failure to obtain a loan commitment within 60 days of the date of the contract voided the contract. Second, the provisions in the current contract are quite different than those that appear in the sale contract in the *Berger* case.

The differences are decisive. In *Berger*, the court found "[s]uch a provision in a contract is a condition subsequent, that is, one which *by its express terms* provides for an ipso facto cancellation on the happening or non-occurrence of a stipulated event or condition." 447 S.W.2d at 19. (Our emphasis). The express provisions in the present contract were contingent upon purchasers obtaining a written mortgage commitment not later than 60 days from date of contracting. However, the present contract also qualified the effect of the failure to obtain the commitment within 60 days by further providing that, "[i]f Purchaser has been unable to obtain said loan commitment by the above date, Seller shall have the right either to (1) attempt such financing for Purchaser within 30 days *after receipt of notification, from Purchaser of disapproval of Purchaser's application for financing,* or (2) cancel and rescind this contract." By Purchasers' own evidence, their loan application was never disapproved and, therefore, they never notified Seller of disapproval. The 30 day window for Seller to obtain financing for Purchasers never opened because no required notice was ever given. Further provisions of paragraph (7) of the sale contract conditioned return of earnest money upon notification to Seller of disapproval of application for financing. In the absence of notice of disapproval of financing, the sale contract was not "by express terms—ipso facto" cancelled or voided 60 days after the contract was signed. *Berger* is inapposite on its facts, but instructs that the terms of the contract are controlling. Third, financing was approved long before closing was required. Finally, Purchasers continued to recognize their obligations under the contract (1) by requesting a release; (2) by attending the meeting on March 23, 1984, and, by offering only failure to sell their home as a reason for not closing; and, (3) by applying for a new loan after March 23, 1984. The court erred in failing to direct a verdict on the issue of liability at the close of all the evidence.

We need not decide claims by Seller that the failure to pay the $13,000 additional earnest money was a breach supported by conceded facts and required the trial court to direct a verdict on liability. Prior to the anticipatory repudiation for failure to close, Seller never asserted the failure to pay additional earnest money as a breach nor did they plead such breach in the petition.

It is also unnecessary to decide issues relating to failure of Purchasers to timely perform promises to obtain financing or whether a single application for financing was sufficient under the contract. A loan commitment for an adequate loan was obtained before closing was required.

Any error of the trial court in failing to strike part of the affirmative defense on the grounds of waiver or the doctrine of commercial honesty are resolved by our holding that Seller is entitled to a directed verdict on the issue of liability and the jury verdict in favor of seller on purchasers' counterclaim.

The matter of damages was not decided because of the jury verdict on the issue of liability. The determination of damages depends upon both factual and legal considerations. We decline to rule on the damage issues which are not fully developed. For example, it is not a matter of undisputed fact that resale was accomplished without delay attributable to seller. We neither approve or disapprove of any rulings of the trial court on the matter of damages. The trial court and parties may find some assistance by reference to *Arnett v. Keith*, 582 S.W.2d 363, 365–366 (Mo.App.1979); *Highland Inns Corp. v. American Landmark Corp.*, 650 S.W.2d 667, 674 (Mo.App. 1983). On the issue of interest see *Twin River Construction Co. v. Public Water Dist. No. 6*, 653 S.W.2d 682, 695 (Mo.App. 1983).

We reverse and remand for entry of a directed verdict in favor of seller on the issue of liability and a determination of damages with interest from July 17, 1984. Costs are assessed against respondents.

SMITH and KELLY, JJ., concur.